[S. F. No. 5869. Department One.—April 3, 1912.]

In the Matter of the Estate of JOHN J. FLEMING, Deceased.

Estate of Deceased Persons—Determination of Relationship and Heirship on Distribution—Findings.—In a proceeding for the distribution of the estate of an intestate to persons claiming to be a half sister and the children of a deceased half brother of the deceased, the evidence is reviewed and, although conflicting, is held sufficient to sustain the findings of the trial court that neither of such claimants was in any way related to the deceased nor one of his heirs at law.

Id.—Claimant Has Burden of Proof to Show Relationship.—In such a proceeding, the burden of proof is upon the persons claiming distribution to establish their relationship to the deceased.

Id.—Appeal—Order Refusing New Trial—Party not Interested in Estate Cannot Question Distribution.—Such a claimant, on an appeal from an order denying her a new trial of the proceeding for distribution, and after the appellate court has approved the finding that she was in no way related to the deceased and had absolutely no interest in his estate, is not an aggrieved party as to findings made on any other issue, or as to the disposition of the estate made by the decree, and cannot question their correctness.

Id.—Sufficiency of Findings to Support Judgment — Review on Appeal.—The fact that the findings made in such proceeding do not support the judgment does not render the judgment void, but only erroneous, a condition warranting a reversal on an appeal therefrom by an aggrieved party. Such a point cannot be considered on an appeal from an order denying a motion for a new trial, but only on direct appeal from the judgment.

APPEAL from an order of the Superior Court of the County of Alameda refusing a new trial of a proceeding for the distribution of the estate of a deceased person. William H. Waste, Judge.

The facts are stated in the opinion of the court.

R. B. Tappan, and F. A. Berlin, for Appellant.

A. L. Frick, A. F. St. Sure, George W. Reed, and Darwin C. DeGolia, for Respondents.

ANGELLOTTI, J.—This is an appeal by Ella Fleming Carter from an order denying her motion for a new trial of a proceeding for the final distribution of the estate of deceased, who died intestate. In her petition for distribution, appellant alleged that the only heirs at law of deceased were herself, an adult half sister of deceased, and Justine Fleming, Annie Fleming, and Ella Fleming, children of a deceased half brother of deceased, and she asked that the whole estate of deceased be distributed to her and said Justine, Annie, and Ella Fleming. There was another petition by Ella Woodbury and three others, alleging themselves to be nephews and nieces of deceased and his sole heirs at law. Still another petition was presented by respondent A. F. St. Sure, as assignee of George A. Myles and Ann Myles, who were the brother and sister of the wife of deceased, who had pre-deceased him, and who were alleged to have been of the nearest degree of relationship, and entitled to take all his estate. The basis of their claim was that the property was common property of deceased and his deceased spouse while such spouse was living, and that in the absence of blood relatives, they were entitled to take the same under subdivision 8 of section 1386 of the Civil Code. The three petitions were heard together. The trial court in its decree specifically found as to Ella Woodbury and her three co-petitioners and as to Ella Fleming Carter, Justine Fleming, Annie Fleming, and Ella Fleming, that they "are not the heirs at law, next of kin, or in any way related to the said deceased, John J. Fleming, nor is any one of them an heir at law, or next of kin, or in any way related to the said deceased, John J. Fleming," and denied the petitions on their behalf. Finding further that deceased left surviving him no blood relation, or person related to him by consanguinity, it distributed the whole estate to petitioner St. Sure, the assignee of George A. and Ann Myles. Ella Woodbury and her three co-petitioners acquiesced in this result, neither appealing from the same, nor inaugurating any proceeding for new trial. Ella Fleming Carter alone moved for a new trial, and has taken an appeal from the order denying such motion.

The principal question for consideration on this appeal is whether such portions of the findings of the trial court as declare that she and her three nieces, Justine, Annie, and Ella

Fleming, are not in any way related to deceased, and that none of them is an heir at law of deceased, are sufficiently sustained by the evidence.

Appellant's claim of such relationship is based entirely upon the claim that the deceased was, in fact, one Richard Fleming, Jr., a son of Richard Fleming, Sr., who came from England to New Orleans, Louisiana, in 1854 or 1855 and who lived in such city until he died in the year 1869. It is not disputed that appellant is a daughter of said Richard Fleming, Sr., by his second wife, or that Justine Fleming, Annie Fleming, and Ella Fleming are the children of a deceased son of Richard Fleming, Sr., by said second wife. Richard Fleming, Sr., had a son, named Richard Fleming, Jr., by his first wife, and appellant's claim of relationship to deceased on the part of herself and her three nieces is based entirely on her claim that deceased was, in fact, said Richard Fleming, Jr.. The burden of proof was upon appellant to establish the validity of this claim. The findings of the trial court were substantially that such claim was not established to its satisfaction by the evidence. Is there sufficient support in the evidence for such a conclusion? If there is, it is not to be doubted that we cannot disturb the findings, even though the evidence is such that sufficient support for a contrary conclusion might also be found therein.

An examination of the evidence on this question contained in the transcript, and a consideration of the arguments contained in the brief of counsel have satisfied us that there is no warrant for holding that the findings in this matter are without sufficient support in the evidence.

It is established by the evidence given on behalf of appellant that Richard Fleming, Jr., was born in England. His mother's maiden name was Bessie Kalaher. She died in England, and subsequently, in 1854 or 1855, the father, Richard Fleming, Sr., came from England to New Orleans with the boy, then a lad of four or five years of age, and there established his residence. Richard Fleming, Jr., ran away from his home when he was a small boy in company with a man named Sawyer. Evidence as to his subsequent whereabouts was very meager. John J. Fleming of Burlington, Iowa, a son of a brother of Richard Fleming, Sr., who resided in Burlington, deposed that he saw him at that place in 1863 or 1864, wear-

ing the uniform of a Union soldier and going under the name of James Sawyer, and representing himself as having been in the Union army. This witness further said that he saw Richard Fleming, Jr. once thereafter, between the years 1880 and 1884, in Burlington, when he looked very badly, and his clothes were in a dilapidated condition, and he asked for some money, saying he was very much in need thereof. He remained there one or two days only. There was testimony that in 1884 or in 1885 he was in New Orleans for about a week, when he made himself known to his relatives, and said he was from California and said he was going back there. John J. Fleming of Burlington was of the opinion that a photograph of deceased shown him was the photograph of Richard Fleming, Jr. Certain of the witnesses who saw Richard Fleming, Jr., in New Orleans in 1884 or 1885 testified that they were of the same opinion. There was testimony on the part of these witnesses and John Fleming of Burlington, none of whom ever saw Richard, Jr., except upon the occasions already designated, as to his height, apparent age, and general appearance, the tendency of which was to show that he resembled deceased in those regards. There was also testimony of a Mrs. Sears who knew deceased in Oakland, Cal., from the year 1883, to the effect that deceased told her that he ran away from home while young and had lost sight of his folks, but knew that he had an uncle, a brother of his father, living in Burlington, and also that when deceased returned from a trip to New York, which she said he took in 1887 by steamer by way of Panama, he told her that he came back from New York by rail by way of New Orleans. There was also the testimony of two men named Valentine to the effect that deceased had told them in the late eighties that Judge Fleming of Burlington was his uncle, and they further testified that he resembled the Burlington Flemings in appearance. There was also testimony of another witness to the effect that appellant resembled deceased in appearance. Another witness testified that deceased once told him, when he was drunk, that he was born in England, and that he had "more relatives what you think of." There was also the evidence of some witnesses to the effect that in their opinion there were certain points of resemblance between deceased and the photograph of some member of the New Orleans Flemings, which photograph was in evidence

before the trial court. Such, in a general way, is the testimony relied on by appellant as showing that deceased was Richard Fleming, Jr.

The deceased resided in Alameda County, Cal., from at least as early as 1872, for he was registered as a voter of that county on September 30, 1872, to the time of his death, January 17, 1907. He always went by the name of John or John J. Fleming, never having been known in that county by any other name. His first registration showed the name to be John Fleming, and his place of nativity to be New York. His last affidavit for registration, made September 28, 1904, gave his name as John James Fleming, and New York as his place of birth. His affidavit for a marriage license made April 10, 1875, gave his name as J. J. Fleming, his age as twenty-five years, and his place of nativity as New York. The certificate of his marriage states him to be John James Fleming, age twenty-five years, of New York City, a son of James Fleming and Mary—nee Smith, his wife. His record as a depositor at the Oakland Bank of Savings, furnished by himself, gave his father's name as P. Fleming, his mother's maiden name as Mary Kyley, his birthplace as New York City, and his date of birth September 15, 1850. His depositor's record at the Union Savings Bank, signed by himself, showed his mother's maiden name to have been Mary Kyley and his birthplace New York City. His depositor's record at the Central Bank, made in December, 1896, entirely in his own handwriting, was signed John J. Fleming, and stated his father's name to have been P. Fleming, his mother's maiden name to have been Mary Kyley, and his date of birth September 15, 1850. He had told several apparently disinterested witnesses that he was born and raised in New York, and was apparently quite familiar with that city, and had apparently never told any one that he had lived in New Orleans, or had any relatives there. During his residence in Alameda County, he apparently left the state only once, and the evidence is ample to support a conclusion that this was after he sold a saloon owned by him, known as the Gem Saloon, which was shown to have been August 28, 1885. There is ample evidence to support a conclusion that he left San Francisco by steamer for Panama, avowedly bound for New York, that he went directly to New York by this route, and returned to California within a few

weeks, variously stated by witnesses from four to eight or nine. There was nothing to indicate that he passed through or visited New Orleans on this trip, other than the testimony of the New Orleans witnesses already referred to, except the testimony of Mrs. Sears that he told her he "came back from New York by rail by way of New Orleans and visited that state." There was absolutely nothing other than the testimony of John J. Fleming of Burlington already referred to, to indicate that he visited Burlington on this trip, or at any other time. So far as appears, the only claim of any mention by him of New Orleans in the whole course of his residence in Alameda County was that contained in the testimony of Mrs. Sears above noted. There was nothing to indicate that he had ever served in the United States army or that he had ever said anything about any such service. No reason appears why deceased should have assumed a name not his own and especially no reason why he should have assumed the name of John J. Fleming, if it were not his true name.

We have set forth in a general way the testimony before the lower court on the question at issue. It seems very clear to us that it is of such a nature as to support the conclusion of the lower court that appellant had not satisfactorily established that deceased was Richard Fleming, Jr., or in any way related to the family of which he was a member. At the very least, the circumstances relied on by respondent were sufficient to present a case of conflicting evidence. In view of the many other circumstances appearing, the trial court was not bound to accept the testimony of Mrs. Sears and the Valentines as correctly stating the exact purport of statements made by deceased to them in the course of casual conversation many years before. Even if such statements had been made by him they would by no means be conclusive, in view of the other circumstances. The same is true as to the testimony relating to the claimed resemblance between deceased and the man who visited New Orleans and Burlington in the early eighties, and is also true of every bit of evidence relied on by appellant. There is the possibility that deceased and Richard Fleming, Jr., were, in fact, one and the same person. If, however, deceased was born in New York, and his father's name was not Richard Fleming, it is clear that he was not the Richard Fleming, Jr., referred to in the evidence. There was ample evidence to sustain a conclusion to such an effect.

It must be held, in view of what we have said, that the findings of the trial court to the effect that neither appellant, nor any one of her three nieces was in any way related to deceased, or was one of his heirs at law, are sufficiently sustained by the evidence.

We have examined the few rulings that are complained of in the matter of striking out certain evidence given by witnesses for appellant bearing on the issues we have discussed, and find nothing therein prejudicial to appellant.

What we have said disposes of the appeal of Ella Fleming Carter and requires an affirmance of the decree, she being the only appellant. Learned counsel urge several reasons why, even if appellant and her nieces are adjudged to be without interest in the estate of deceased, the distribution of the property to the assignee of George A. and Ann Myles was erroneous, such as, that George A. Myles was estopped from asserting any right to succeed to any of the property because of an alleged adjudication against him on the proceeding for letters of administration when he and the public administrator were opposing claimants; that even if appellant and her nieces were in no way related to deceased, there are other nearer heirs and next of kin than George A. and Ann Myles; and that there was no proof that the property left by deceased was the common property of deceased and his deceased spouse while such spouse was living (a condition essential to the right of relatives of the deceased spouse to take any part of his estate under subdivision 8 of section 1386 of the Civil Code). But it being once established that appellant was in no way related to deceased and is absolutely without interest in his estate, it is of no concern to her how the estate is distributed, and, as said in *Estate of Walker,* 148 Cal. 166, [82 Pac. 771], "she is in no position to contest the decree, it matters not to her to whom the estate is distributed." There being no sufficient legal ground for the granting of a new trial as to the issues material to her relationship to deceased and her interest in his estate, the findings on which being as already stated, she is in no sense an aggrieved party as to the finding on any other issue, or as to the disposition of the property made by the decree (see *Estate of Walker,* 148 Cal. 166, [82 Pac. 771]; *Blythe* v. *Ayres,* 102 Cal. 254, [36 Pac. 522]; *Estate of Piper,* 147 Cal. 606, [82 Pac. 246]). Even if such a condition would

assist appellant, there is no foundation for the claim that the decree of distribution is void on its face. The utmost that might be contended for against it is that the findings do not support the judgment in so far as the distribution to the assignee of the Myles is concerned. But the fact that the findings do not support a judgment does not render a judgment void, but only erroneous, a condition warranting a reversal on an appeal therefrom by an aggrieved party. Such a point, as has often been held, may not be considered on a motion for a new trial, even when such motion is prosecuted by the party aggrieved, but only on direct appeal from the judgment. But, as we have said, it is a matter of no concern to appellant under the circumstances, who was found entitled to take this property or how it was in fact distributed, it being established that she, in any event, has no right to any part of it.

The order appealed from is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.