[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 29 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 30 
This is an appeal from a decree in a proceeding under section 1664 of the Code of Civil Procedure, determining the rights of all persons claiming to be heirs, or entitled to distribution. For convenience, appellants now before this court are designated as the "Kagan claimants."
The deceased left the bulk of his property by will to respondent, the Hebrew Home for Aged Disabled, a charitable corporation (hereinafter called the Hebrew Home). Such disposition was invalid as to the bulk thereof, if the testator left "legal heirs" (there being no noncharitable residuary legatee or devisee), and all the property of the testator devised or bequeathed to charitable purposes in excess of one-third of the entire estate would, in that event, descend to the "next of kin, or heirs, according to law." (Civ. Code, sec. 1313) The appellants claimed to be such legal heirs, and that the property, therefore, goes to them by the law of succession. Numerous other claimants were before the court in this proceeding and introduced evidence in support of their respective claims, but the court found that none of the parties was a legal heir of the deceased or his next of kin, and that the deceased died leaving no legal heirs nor next of kin, and therefore that the will was valid as to its charitable bequests and devises. The main question upon this appeal is whether or not the evidence before the trial court was sufficient to justify the findings that the deceased died without legal heirs, *Page 31 
and that the appellants are not next of kin or legal heirs of the deceased. Appellants claim that they are cousins of the decedent. This claim is based upon the allegation that their aunt, Rasche Kagan, was the mother of Julius Friedman, the deceased. By this chain of evidence they claim to be relatives in the fourth degree. The next claim of appellants is that Julius Friedman and the Kagan claimants are all the descendants of David Friedman, who, it is alleged, was the grandfather of Solomon Elias Friedman, the father of the deceased, and of Marcus Kagan, the father of one group of Kagan claimants, and of a David Kagan, the father of the other group of Kagan claimants. This claim is entirely independent of the question of who was the mother of the deceased. It is alleged that the Kagan claimants are all the grandchildren of Jossel Kagan, but that they are related in different degrees of kinship to deceased. For it is claimed that Jossel first married Malke Friedman, a daughter of the decedent's great grandfather, David Friedman, by whom he had a son Marcus, the father of one group of the Kagan claimants, who are thus related to the decedent in the sixth degree; and that after Malke's death he married. Hinde Friedman, a niece of his deceased wife, a granddaughter of said David Friedman, and by her had a son, David Kagan (thus a halfbrother of Marcus Kagan), whose children constitute the other group of the Kagan claimants, and are thus related to the decedent in the seventh degree. In other words, it is claimed that Jossel Kagan first married a great aunt of the deceased on his father's side, and upon her death in 1800 married a second cousin of the deceased on his father's side. The evidence relied upon to establish these claims is both oral and documentary, the oral consisting, in part, of declarations of deceased members of the family, or alleged family of the decedent, testified to by deposition on written interrogatories through an interpreter. Such pedigree declarations so elicited, while properly admissible in evidence, are extremely unsatisfactory, for the witness testifies without any fear of incurring the penalties of perjury. (2 Moore on Facts, 1150, 1156, 1166; Estate of Emerson, 175 Cal. 724, [167 P. 149];People v. Ah Yute, 56 Cal. 119; People v. JanJohn, 137 Cal. 220, [69 P. 1063].) The Kagan claimants produced evidence tending to show that Rasche Kagan, a daughter of their grandfather Jossel Kagan, *Page 32 
married Solomon Elias Friedman of Mitau, Russia, whom the deceased declared in his will to be his father. There is no record evidence showing who was the wife of Solomon Elias Friedman other than the census records of the town of Mitau, Russia, in which it is stated that the wife of Solomon Elias Friedman was Rossel (maiden name not given). For the purposes of this discussion we will assume that the Solomon Elias Friedman of Mitau, the husband of "Rossel," was the father of the decedent and that "Rossel" was his mother. The first difficulty in appellants' claim of relationship through decedent's mother is that the name of the wife of Solomon Elias Friedman is given as "Rossel," not "Rasche." Chaie Rasche Rosen and her niece, Helena Goldberg, both testify that "Rossel" and "Rasche" were the same person and that she was a daughter of Jossel Kagan and a sister of Marcus Kagan, and halfsister of David Kagan, the father of one branch of the Kagan claimants. If this testimony was given full weight and was uncontradicted, it was sufficient to establish the relationship of all the Kagan claimants in the fourth degree (first cousins). The testimony of Chaie Rasche Rosen, as to her personal knowledge and as to the pedigree declarations, was also mainly relied upon to establish the above-mentioned claims of relationship in the sixth and seventh degrees. Was there contradictory evidence, or evidence going to the weight of this testimony that justified the trial court in finding the fact to be contrary to this evidence? If it can fairly be said that these witnesses willfully swore falsely as to any material fact, the court was justified in rejecting their whole testimony. (Code Civ. Proc., sec. 2061, subd. 3.) Respondents point out one item of material evidence as to which appellants admit that both Chaie Rasche Rosen and Helena Goldberg testified to a fact that was not true. If this testimony was willfully false and material, or if the trial court was justified in arriving at the conclusion that it was willfully false, then the testimony of these witnesses might have been entirely disregarded, and we are not required to consider whether or not the court had the power arbitrarily to reject the testimony of a witness. In order to present the significance and effect of this testimony, it will be necessary to elaborate the relationship involved in this controversy. The untrue statement was that Hirsch Friedman, a brother of the decedent, died in Alt Sagar, a town in Russia *Page 33 
near Schavli, not far distant from Mitau, in the year 1830, whereas it is admitted and proved beyond question by appellants that Henry Friedman, the brother of the decedent, died fifty-one years later (1881) in New York City, as a result of a street-car accident. It is claimed by appellants that "Hirsch" and "Henry" are one and the same person. It was a material and essential part of the proof of heirship by all the Kagan claimants to show that all the brothers and sisters of the decedent were dead, without issue surviving them. The witness Chaie Rasche Rosen testified that Henry's mother, Rasche Friedman, as she claimed, who died before 1871, told her that Henry (or Hirsch) had died of the cholera in 1830, as above stated. Appellants argue that this was an honest mistake of the witness, due to misinformation. Respondents argue that it was willfully false. The question as to which of these contentions is correct was exclusively for the trial court, and justified that court in wholly rejecting the testimony of Chaie Rasche Rosen and Helena Goldberg, if that court decided the testimony to be willfully false. There were certain parties to this proceeding, among others, known as the Grunwaldt claimants, the Bernstein claimants, and the Liebe Friedman claimants. As we said in dismissing their appeals from the decree, "each of these groups claims by an asserted kinship to the decedent, wholly distinct from, independent of, and antagonistic to the claims of each and all of the other groups." (Estate of Friedman, 173 Cal. 411, [160 P. 237].) The evidence introduced by the Grunwaldt, the Liebe Friedman, and the Jacobson claimants tended to prove that the mother of Julius Friedman was not Rasche Kagan, the aunt of the Kagan claimants, and therefore to contradict the claims of the Kagans to relationship to decedent in the fourth degree. There are many declarations of the decedent in evidence inconsistent with both their claims of heirship. After the death of his brother Nathaniel (1895) he frequently said that he had no relatives left. In the will (from which statement the word "not" is evidently omitted by inadvertence) he declared, "I am [not] aware of any kin," etc. Although he did not state who his mother was, he made declarations to many witnesses concerning his relationship to the Grunwaldt claimants, through his mother, entirely inconsistent with the claim that she was Rasche Kagan. Even if it were proper for us to do so, it would be impossible, within the reasonable *Page 34 
limits of an opinion, to discuss the weight and credibility of the evidence before the trial court. The trial occupied nearly two years (two hundred and forty-six days of actual trial). The case was under submission to the trial court for over a year. The reporter's transcript of the evidence taken on the trial contained six thousand pages, with three thousand pages more of documentary evidence; the printed transcript on appeal, on bill of exceptions, 1,895 pages, containing seven hundred and fifty-four thousand words (as indicated by folio numbers), and the briefs of nearly one thousand six hunderd pages about six hundred and forty thousand words, present for our consideration one million three hundred and ninety-four thousand words, not to mention oral argument and diagrams, and we are admonished that an opinion should contain about 2,333 words. It is sufficient for us to say that after a careful consideration of the evidence and arguments in relation thereto, we hold that the finding that the Kagan claimants are not of kin to the deceased is supported by substantial evidence. The appellants complain of portions of the opinion of the trial court, but we cannot consider this matter. (Goldner v. Spencer, 163 Cal. 317, 320, [125 P. 347].) Holding, as we do, that the Kagan claimants were properly found not to be of kin to the deceased, many of the questions raised by appellants become immaterial, for if they are not entitled to inherit, they are not interested in the other questions involved in the decree and cannot be heard to urge error in the decree in favor of other claimants or the evidence in support thereof. (Blythe v. Ayres,102 Cal. 254, 257, 258, [36 P. 522]; Estate of Walker,148 Cal. 162, 166, [82 P. 770]; Estate of Fleming, 162 Cal. 530, [123 P. 284].)
This consideration disposes of all claims of error based on the very strong presumption that decedent did leave heirs. (People v. Roach, 76 Cal. 294, 297, [18 P. 407]; State v.Miller, 149 Cal. 209, 211, [85 P. 609].) There was no presumption of law that appellants were such heirs. The presumption is merely a recognition of the "ordinary course of nature." (Code Civ. Proc., sec. 1963, subd. 28.) For the same reason it is unnecessary to consider the effect of this presumption upon the interpretation of section 1313 of the Civil Code, supra. This consideration also disposes of the point that the complaint of the Hebrew Home was improperly brought in its individual capacity and not as trustee, and also *Page 35 
of the claims that the decree in favor of the Home was not in accordance with the will, as appellants, if not heirs, are not entitled to complain of such error, if any was committed.
Appellants rely upon some of the declarations of the deceased concerning his family, such as the declaration that he was a son of Solomon Elias Friedman, of Mitau, Russia, contained in his will, and his numerous declarations concerning his relationship to his brothers, David, Henry, and Nathaniel; that he had a sister named Esther, who had four children, Morris, Helena, David, and Rosetta Gottleib; but appellants object to the admissibility of statements made by the deceased after the death of his brother Nathaniel (the other relatives just mentioned having theretofore died), that he had no relatives. The basis of such objection is that until it is shown that the deceased was a member of the family of the Kagan claimants, his declarations in that regard are inadmissible, and that where the declaration itself is offered for the purpose of showing that there was no such relationship, it is inadmissible. It would seem absurd for the appellants, claiming that the decedent is a member of their family, to object to his declarations on the ground that they are inadmissible because he was not a member of the family, were it not for the fact that such contention finds support in Estate of James, 124 Cal. 653, [57 P. 578], wherein it was held that the declaration of the deceased that he was a widower was inadmissible against a woman who claimed that she was his widow. Section 1870, subdivision 4, of the Code of Civil Procedure of this state provides that "the act or declaration, verbal or written, of a deceased person in respect to the relationship, birth, marriage, or death of any person related by blood or marriage to such deceased person," may be given in evidence. The other declarations of the decedent that he had no surviving relative, that all his relatives were gone, that he had no one left, were in effect declarations that each and every member of his family, to whom he was "related by blood or marriage, was dead," and were admissible for that reason. (See Estate ofHartman, 157 Cal. 206, [21 Ann. Cas. 1302, 36 L. R. A. (N. S.) 530, 107 P. 105], on general subject.) The fact that the effect of this testimony would be to rebut evidence tending to show that the Kagan claimants were "relatives by blood or marriage" does not affect its admissibility. They were declarations concerning the members of *Page 36 
his family. The fact that they were erroneous, if it be a fact, would not affect their admissibility, but only their weight. As to the declarations being ante litem motam, it will be observed that the declarations covered a period from 1895 on. We think the declaration in the will was not of that class. But even if it were, no objection was offered to its admission in evidence. (See 1 Wharton on Evidence, secs. 193, 213; Chamberlayne's Best on Evidence, 3d Am. ed., p. 458a.)
The appellants complain that the executors actively participated in the trial, offered evidence, and objected to testimony offered by others. They were parties to the proceeding (Code Civ. Proc., sec. 1664), and while we have held (Estate of Friedman, 176 Cal. 226, [168 P. 21]) that they had no duties to perform as executors for or against any of the claimants in the proceeding, it does not follow that their participation was so far erroneous or prejudicial as to authorize the reversal of the judgment. That question would depend upon the evidence produced by them and objected to by them. From an examination of the case we are satisfied that the Kagan claimants were in no wise prejudiced by such conduct of the executors. The appellants have no just cause of complaint that witnesses were introduced by the executors if their testimony was relevant and competent, and if they in effect acted, as it is claimed, as attorneys for the Hebrew Home, appellants are no more affected prejudicially than they would have been had the Hebrew Home employed them. It is urged that the Hebrew Home, acting as plaintiffs, having introduced the will and its probate only should have been nonsuited for a failure to prove that decedent left no heirs, and hence a failure to establish their right to the entire residue. There are several answers to that proposition. As has been said, unless appellants establish their claim of heirship, they are not aggrieved by the ruling of the court on the claims of others. Appellants were, in effect, plaintiffs, so far as their own claims were concerned. They were not injured because some other claimant failed. It may also be said that the Hebrew Home was a beneficiary under the will to property over and above the two-thirds claimed by the heirs, and that therefore, if for no other reason, the motion for nonsuit should have been denied. The only real effect of the denial of the motion was to regulate the order of procedure, which *Page 37 
was within the discretion of the court. (Code Civ. Proc., sec. 607.)
The witness Chaie Rasche Rosen having testified by deposition in 1903, a motion was made to suppress the deposition upon the ground that it had not been fairly taken, and the depositions of those present at the taking of the deposition of 1903, including the interpreter, the commissioner, a nephew of the witness, Dr. Goldberg, and the witness herself, were taken in 1905 and were read in evidence at the trial on the motion to suppress, which motion was denied. Counsel discuss at considerable length the question of whether or not these depositions can properly be considered by this court and were properly before the trial court upon the question of heirship, or whether their proper consideration was confined to the admissibility of the deposition. We do not think the court was bound to ignore these depositions in weighing the value of the deposition of 1903. The proof may not have been sufficient to have excluded the deposition, but nevertheless might seriously affect the weight of that deposition. The court was entitled to take these depositions into consideration for that purpose. The circumstances under which testimony is given always affects its weight. If a witness testifying before the court is being assisted in giving names and dates, there being a great number of each, such fact would be considered in the determination of the value to be given to the evidence, and if this condition is disclosed in any proper manner, where the witness has been examined outside the presence of the court, we see no reason why it is not equally to be considered. We are satisfied, therefore, that these depositions were properly before the trial court in determining the appellants' claims. From the record we do not know, however, whether or not the trial court considered them in reaching a conclusion and we do not find it necessary to do so. A comparison of her two depositions, however, is very persuasive of what seems almost self-evident without it, that the witness had some assistance, either in or out of court, in giving names and dates, as the interpreter testifies.
Section 1664 of the Code of Civil Procedure provides that "in all estates now being administered, or that may hereafter be administered, any person claiming to be heir to the deceased, or entitled to distribution in whole or in any part of such estate, may, at any time after the expiration of one year *Page 38 
from the issuing of letters testamentary or of administration upon such estate, file a petition," etc. It is claimed that the trial court was without jurisdiction to hear and determine the claims of the parties to this proceeding, for the reason that the notice of the hearing of the proof of the will was defectively published, in that it was not published on Sundays during the period of publication, the publication being in a daily paper. An order admitting the will to probate was made and letters testamentary were in fact issued, and we do not think the question as to whether or not such letters were properly issued is a jurisdictional question in this proceeding, but appellants are in no condition to raise this question for two reasons: First, the Hebrew Home, acting as plaintiff, alleged that the order admitting the will to probate was duly given and made and that letters testamentary were issued, and the appellants did not in their pleadings deny that allegation; second, they appeared and submitted to the jurisdiction of the court and attempted to establish in the lower court, as they do here, their claims of heirship. Under such circumstances they waived all objections to the jurisdiction of the trial court.
Appellants gave notice of intention to move for a new trial, alleging as one of the grounds of such motion irregularity in the proceedings of the court by which the appellants were prevented from having a fair trial (Code Civ. Proc., sec. 657, subd. 1), and on July 3, 1913, served affidavits in support of such claim, for use upon the motion. Appellants subsequently, before the hearing of the motion for a new trial, made a motion under the provisions of section 170, subdivision 4, of the Code of Civil Procedure, on the ground of alleged bias and prejudice, to prevent the judge from hearing the motion for a new trial. Upon this motion, the affidavits served July 3, 1913, and supplementary affidavits were offered by appellants, counter-affidavits were filed, including one by the judge denying any bias or prejudice, and the motion was denied. An appeal was taken from the order and the order was affirmed by this court. (Estate of Friedman, 171 Cal. 431, [153 P. 918].) Reference to the opinion upon that appeal is made for a discussion of the showing made by said affidavits. We there said: ". . . the foundations of the charge itself are so unsubstantial that it would have been a failure of duty on the part of the judge to have made any *Page 39 
other order. . . ." Mr. Justice Shaw, in his concurring opinion, said: "The charge of bias and prejudice scarcely deserves serious consideration, even if there were no denial." While that appeal was pending, the motion for new trial came on for hearing, and upon such motion the same affidavits presented by appellants upon the previous motion were offered in support of the charge of irregularity in the proceedings of the court, but the counter-affidavit of the judge himself was not again offered in evidence. Appellants claim that in reviewing the order denying the motion for new trial, the record is thus different from that involved upon the previous appeal from the order denying the motion under section 170, subdivision 4, of the Code of Civil Procedure, and that the failure of the judge to file another affidavit denying bias and prejudice, or of the attorneys to offer the one already on file, requires a reversal of the order denying a new trial. While it is true that the course of conduct alleged in the affidavits used on the first motion could also be used as evidence of irregularities, the question of bias or prejudice cannot be raised in this way. Bias or prejudice is not an irregularity. It is a condition of mind. The statute provides the method by which that condition may be taken advantage of. (Code Civ. Proc., sec. 170, subd. 4.) It is true that on an appeal from an order on motion for new trial this court can review the propriety of an order denying the motion for a change of judges (Keating v. Keating,169 Cal. 754, [147 P. 974]), or it can be reviewed on direct appeal (Estate of Friedman, 171 Cal. 431, [153 P. 918],supra). On a motion for a new trial, upon the ground of irregularities in the proceedings of the court, we are dealing with those irregularities, and it is immaterial whether they result from bias and prejudice or not. Hence it was unnecessary for the judge to file a counter-affidavit denying bias and prejudice upon the hearing of the motion for new trial. Upon the question as to whether or not the affidavits of appellants show any irregularities in the conduct of the court, we hold that they do not, and find it unnecessary to add anything to the discussion on that subject in the opinion above referred to. (Estate of Friedman, 171 Cal. 431, [153 P. 918].)
Appellants complain of the failure to find upon the second claim of heirship, by which it is sought to establish their relationship to the deceased in the sixth and seventh degrees, by *Page 40 
reason of their being descendants from the great grandfather of the deceased. The ultimate fact in issue between the parties in this case is as to whether or not they were related to the deceased, and, if so, their degree of kinship. The finding that they are not related to the deceased in any degree is a finding of this ultimate fact and renders unnecessary findings in detail upon the claim of relationship set up by the appellants.
We find no merit in the other claims of irregularities.
There are no other matters in the record meriting discussion.
Judgment affirmed.
Richards, J., pro tem., Sloss, J., Melvin, J., Victor E. Shaw, J., pro tem., Shaw, J., and Angellotti, C. J., concurred.