[Civ. No. 24946.   Second Dist., Div. Three.   Mar. 9, 1961.]

Estate of ERNEST F. GRAMESPACHER, Deceased. ERNEST F. GRAMESPACHER et al., Appellants, v. ROBERT S. JOHNSON et al., as Executor, etc., et al., Respondents.

Charles E. Ogle for Appellants.

Muller & Woolpert and Wickson R. Woolpert for Respondents.

BISHOP, J. pro tem.*—Decedent's two sons, Ernest F. Gramespacher and Donald E. Gramespacher, have appealed from the decree determining that their father's estate should

---

*Assigned by Chairman of Judicial Council.

go in trust to the three trustees named in his will, the decree having been entered, following a hearing on the petition of the sons, under section 1080, Probate Code, requesting that the court determine to whom distribution of the estate should be made. The contentions of the appellants are (1) that the provisions of the will attempting to establish a trust were so uncertain that they failed of their purpose; (2) if a trust was established, it was one for charity, and so valid only as to a third of the estate leaving two-thirds not disposed of; and (3) that in any event, they were pretermitted heirs, and so entitled to take in spite of the will. The conclusions we have reached are that the two sons were not pretermitted, but expressly omitted heirs, and that, as they are to receive no part of the estate, whether or not the trust is valid they are in no position to contend, on appeal, that the decree was in any respect erroneous.

The answer to appellants' third contention is the key to our disposition of the other contentions. Section 90 of the Probate Code, as far as pertinent to this case declares: "When a testator omits to provide in his will for any of his children . . . unless it appears from the will that such omission was intentional, such child . . . succeeds to the same share in the estate of the testator as if he had died intestate." The testator in this case did omit to provide in his will for either of his sons. Was that omission intentional?

■ It was intentional. In the "Third" paragraph of his will, the testator declares: "I have two children . . . ERNEST GRAMESPACHER . . . and DONALD EDWARD GRAMESPACHER. . . . I think a great deal of my sons and have made conditional provisions for them in my insurance policies. I am pleased that they are doing well and are not in need of further help from me." Not only did they receive no further help, by way of the will, but in the "Fifth" paragraph the testator stated: ". . . in no event nor under any circumstances shall any part of my estate go to my relatives. . . ." This he reemphasized in the "Seventh" paragraph: "I have purposely made no provision herein for any other person, whether claiming to be an heir of mine or not, and if any person should claim to be an heir of mine and as such assert a claim to my estate or any part thereof . . . I hereby give and bequeath the sum of One Dollar ($1.00) and no more, in lieu of the provision which . . . I might have made herein for such person or persons."

It could be argued, on good authority, that the will disclosed the intention of the testator not to provide for his sons, even had their names not been mentioned, because of what was declared in the Fifth and Seventh paragraphs. (*Van Strien v. Jones* (1956), 46 Cal.2d 705, 707 [299 P.2d 1, 2]; *Estate of Brown* (1958), 164 Cal.App.2d 160, 162-164 [330 P.2d 232, 233-235]; *Estate of Fernstrom* (1958), 157 Cal.App.2d 380, 383-385 [321 P.2d 25, 27].) We do not need to rely on these cases, however, for the sons were mentioned in the will before us and they must have been in the testator's mind when he, later, referred to "relatives" and "heirs." "It is trite to say that the intention of the testator is the polar star that must guide in the interpretation of a will to which all other rules must yield. (Prob. Code, § 101; *Estate of Salmonski*, 38 Cal.2d 199, 209 [238 P.2d 966].) The question is to be dealt with by reading the will as a whole and determining the intent therefrom. (*Estate of Northcutt*, 16 Cal.2d 683, 689 [107 P.2d 607].)" (*Estate of Smythe* (1955), 132 Cal.App.2d 343, 345 [282 P.2d 141, 143].) It is difficult to imagine how the testator in this case could have made plainer than he did that he intended *not* to provide for his two sons in his will.

The concluding paragraph of the Fifth subdivision of the will is certainly consistent with, if not sufficient evidence by itself of, the testator's clear intention not to make provision for his two sons. It reads: "If the said distribution to the said charitable and/or religious organizations should be held in violation of Section 41 of the Probate Code of the State of California or of any other provision of the law, then I direct that such disposition to the extent that the same is valid and legal shall remain in full force and effect. Any portion of my estate which shall be held to have been disposed of in violation of Section 41 of the said Probate Code or of any law, shall be distributed to Robert S Johnson, Reverand John De Young and Mary Westbrook, as joint tenants, personally or to the survivor of them. However, in no event nor under any circumstances shall any part of my estate go to my relatives, for although I think a great deal of. them, I want my property to go where I firmly believe it will do the most good." With this direction in the will, should it be determined, first, that the trust scheme is void, or second, that it is a valid trust but one for charitable purposes and therefore good only as to one-third of the estate, it would still be true that the appellants were not provided for. ▮▮ To arrive at this conclusion, it is proper, but not necessary, to

apply the principle thus expressed in *Estate of Akeley* (1950), 35 Cal.2d 26, 29, [215 P.2d 921, 17 A.L.R.2d 647] : "Constructions leading to intestacy either in whole or in part are not generally favored but will be rejected when the language is reasonably effective to dispose of the entire estate; and liberal interpretation is employed to that end. [Citing cases.] "

■ In order that the appellants are to succeed, in this case, the disposition of his property as primarily intended by the testator must be prevented either by some rule of law governing the disposition of property in trust, or by the limitations imposed by section 41 of the Probate Code. But, the intent of the testator is plainly expressed that in either of those events, and to the full extent that they make his primary intent impossible, his secondary intent is to control; those named as trustees are to take "personally."

We are not at all persuaded by appellants' arguments (1) that the provisions now under consideration were meant to control *only* if the trust failed *in part,* and (2) that those provisions attempt, in reality, to impose on the individuals to whom the property is to go, the same trust burdens that the previous expressed terms endeavored, though unsuccessfully, to place upon them, as trustees. We find the testator, contemplating that for some reason that which he had undertaken to provide might be legally impossible, expressed an alternative choice which he figured would not run afoul either of section 41 of the Probate Code or of any other law. ■ It may well be that the testator had good cause to believe that the use that he wished to have made of his estate would be made of it by those he trusted, whether it went to them in trust, or to them personally. Many a testator has left property to a friend, in the belief—well founded—he would use it as had been agreed. A bequest in such a situation is not the creation of a "trust" in any legal sense. See *Estate of Feldman* (1947), 78 Cal.App.2d 778, 787-790 [178 P.2d 498, 505], and cases cited.

■ Nor do we find the testator's use of the words "shall be distributed" rather than "give, devise and bequeath" proof that he was imposing a trust on the three individuals, as appellants argue. We note that the Fifth subdivision, in which the trust is set up, uses the words "I give, devise and bequeath to three trustees. . . ." If there is any significance in the subsequent use of "shall be distributed," providing where the property is to go if the trust provisions are outlawed, the choice of different words in the latter situation

from those used settling up the trust, would indicate that the latter was not "in trust." We find no significance, however, in the testator's choice of these words. See discussion of the use of "distribution" in *Estate of Rankin* (1953), 118 Cal.App.2d 184, 186 [257 P.2d 95, 97].

We conclude without hesitation, therefore, that whatever the holding should be with respect to the provisions of the will leaving the estate to the trustees, and whether the decree that declares that that is how it is to go, is or is not correct, it makes no difference to the appealing sons of the testator; a reversal of the decree would do them no good; they are not entitled to any part of the estate, no matter what answer is given to their contentions that no valid trust was created, but that if it be held that one was created, then it reached only one-third of the estate. This being so, the decree is not to be reversed on this appeal. (*Estate of Walden* (1914), 168 Cal. 759, 761 [145 P. 100, 101] (citing cases); *Estate of Hughson* (1916), 173 Cal. 448, 454 [160 P. 548, 551]; *Estate of Friedman* (1918), 178 Cal. 27, 34 [172 P. 140, 143-144]; *Estate of Thramm* (1947), 80 Cal.App.2d 756, 766 [183 P.2d 97, 103]; *Estate of Nepogodin* (1955), 134 Cal. App.2d 161, 173 [285 P.2d 672, 681].)

The decree is affirmed.

Vallée, Acting P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 3, 1961.