[Civ. No. 1352. Fifth Dist. Jan. 8, 1971.]

Estate of LINUS A. GOYETTE, Deceased.
DIOCESE OF MONTEREY-FRESNO EDUCATION &
WELFARE CORPORATION et al., Petitioners and Respondents, v.
AMOS J. GOYETTE, Objector and Appellant.

COUNSEL

W. A. Boyd and Charles A. Zeller for Objector and Appellant.

Andrews, Andrews, Thaxter & Jones, Andrews, Andrews, Thaxter, Jones & Baxter and James F. Thaxter for Petitioners and Respondents.

OPINION

**GINSBURG, J.**[*]—The decedent herein, Linus A. Goyette, was a widower who left neither surviving parents nor lineal descendants. The appellant, Amos J. Goyette, is a surviving brother and decedent's next of kin. All respondents are charitable corporations.

The decedent's last will was executed more than thirty days but less than six months prior to his death. In it he left certain real property, comprising the bulk of his estate, in trust. The income was to go to a surviving sister, Loretta Belcher, and a friend, Sylvia Starrett, during their lifetimes or until their respective marriages, and thereafter the remainder to respondent charities. The residue of the estate was left to certain relatives, including Andrew F. Ariey, a nephew, and Jean C. Ijams, a niece. Appellant was not one of the residuary legatees and would be entitled to share in the estate only in the event of intestacy.

After the will was admitted to probate, the executrix filed a first account and petition for preliminary distribution. The niece and nephew filed objections. They contended that the gift over to the charities exceeded the limits prescribed by Probate Code section 41 and requested the court to make distribution of the excess according to the provisions of this section.[1] Respond-

---

[*]Assigned by the Chairman of the Judicial Council.

[1]Probate Code section 41, as it read prior to 1968 and as it now reads in pertinent part, provides: "No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, by a testator who leaves a spouse, brother, sister, nephew, niece, descendant or ancestor surviving him, who, under the will, or the laws of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator. If so executed at least 30 days before death, such devises and legacies shall be valid, but they may not collectively exceed one-third of the testator's estate as against his spouse, brother, sister, nephew, niece, descendant or ancestor, who would otherwise, as aforesaid, have taken the excess over one-third, and if they do, a pro rata deduction from such devises and legacies shall be made so as to reduce the aggregate thereof to one-third of the estate. All property bequeathed or devised contrary to the provisions of this section shall go to the spouse, brother, sister, nephew, niece, descendant or ancestor of the testator, if and to the extent that they would have taken said property as

ents filed an answer to the objections, asserting that the niece and nephew had violated an in terrorem clause in the will and, hence, could no longer object to the charitable gifts because they had forfeited their interests.

Thereafter, and prior to the hearing on the petition for preliminary distribution, the appellant herein, Amos J. Goyette, together with his now deceased sister, Lorene Ariey, filed a petition to determine heirship. The petition alleged that the charitable bequests exceeded the proportion permitted under Probate Code section 41. Appellant's counsel were the same attorneys representing him now, and said attorneys also represented the objectors, Andrew F. Ariey and Jean C. Ijams. The heirship petition was filed on March 18, 1965, and noticed by the clerk for hearing on July 15, 1965. No disposition was ever made of it, although it was discussed at a hearing which took place long after the preliminary order of distribution was entered.

On November 25, 1966, the trial judge, in this instance Judge Meyers, made and filed his memorandum opinion concerning the petition for preliminary distribution and the objections filed by Ariey and Ijams. It was found that the niece and nephew had violated the in terrorem clause and did not have the standing to object to the preliminary distribution; distribution was ordered as prayed for. In its decision the court stated: "The parties are agreed that the value of the bequests to charity can only be determined at the time of distribution to the charities and that if the position of the objectors [Ariey and Ijams] is sustained, the court should reserve jurisdiction to determine these values at a future date."

On December 30, 1966, a formal order settling the first account of the executrix and directing preliminary distribution to the trustee named in the will was made. This order recites that the niece and nephew had violated the terms of the in terrorem clause, that they were now entitled to receive $1.00, and no more, and had ". . . forfeited any legal standing to object to charitable bequests and devises under the provisions of Section 41 of the Probate Code." The order also found that preliminary distribution could be made to the trust estate ". . . without . . . injury to the estate or any person interested therein," and "[t]hat said estate is not now ready for final settlement

---

aforesaid but for such devises or legacies; otherwise the testator's estate shall go in accordance with his will and such devises and legacies shall be unaffected.

"Nothing herein contained is intended to, or shall be deemed or construed to vest any property devised or bequeathed to charity or in trust for a charitable use, in any person who is not a relative of the testator belonging to one of the classes mentioned herein, or in any such relative, unless and then only to the extent that such relative takes the same under a substitutional or residuary bequest or devise in the will or under the laws of succession because of the absence of other effective disposition in the will."

and distribution." An appeal from this decree was taken by the niece and nephew, and the decision was affirmed by this court.[2] The judgment became final and a remittitur was filed in the Fresno County Clerk's office on April 11, 1968.

Upon the finding of the forfeiture of the shares of the niece and nephew, appellant herein became entitled to share in any excess, under Probate Code section 41, by virtue of the intestacy thereby created.

On September 10, 1969, respondents filed a "Petition for Order Directing Termination of Testamentary Trust." In it they alleged that the two income beneficiaries, Loretta Belcher and Sylvia Starrett, had assigned their interests in the trust to respondent charities; that respondents were now the only beneficiaries of the trust; and that the purposes of the trust had been accomplished. They asked that the trust be declared terminated, and the trust estate be distributed to them. Appellant filed an answer to the petition in which he alleged that the property claimed by the respondent charitable institutions exceeded the limitations of section 41 of the Probate Code, and requested that the excess over such limitations be distributed to those heirs determined to be entitled to take.

Thereafter, respondents filed a motion to strike appellant's answer. After hearing, the court granted the motion; later, it entered an order directing termination of the testamentary trust and distribution of the whole of the trust property to respondents in accordance with their petition.

Appellant appeals from these orders.

Respondents contend that appellant failed to take timely action to protect his interests under Probate Code section 41, and that distribution to the trust did not extend the time for objecting. They further contend that jurisdiction to determine appellant's right under section 41 was not reserved in the order for preliminary distribution of December 30, 1966, and that this order therefore became a final and conclusive order which has the effect of distributing the whole of the estate to them upon termination of the trust.

Appellant contends that he not only did not waive any rights but that he asserted his rights at all times; that the preliminary decree of distribution to the trust extended the time for determination of appellant's rights under Probate Code section 41 to the time of termination of the trust; and that the decree itself reserved jurisdiction.

Under Probate Code section 41 (fn. 1, *supra*), only certain specified

---

[2]See *Estate of Goyette,* 258 Cal.App.2d 768 [66 Cal.Rptr. 103].

classes of persons may exercise the rights thereby created (*Estate of Bunn,* 33 Cal.2d 897, 900 [206 P.2d 635]). ■ The right to question the proportion of the estate left to charities and to take any excess may be waived by a member of the class by agreement (*Estate of Lingg,* 71 Cal.App.2d 403, 407 [162 P.2d 707]). The theory of the section is not to prevent charities from receiving or accumulating property, but rather ". . . to prevent what was deemed a wrong and injustice to those who should naturally be the recipients of the bounty of a testator—his heirs at law . . . —and as a protection against hasty and improvident gifts to charity by a testator of his entire estate to the exclusion of those who in the judgment of the Legislature had a better claim to his bounty." (*Estate of Dwyer,* 159 Cal. 680, 687 [115 P. 242].) ■ Section 41 ". . . is not only a statute of restriction, it is *a statute of intestate succession.*" (Italics added.) (*Estate of Nicely,* 235 Cal. App.2d 174, 184 [44 Cal.Rptr. 804].) Thus, where members of the designated class have been intentionally omitted in the testator's will they cannot object to a charitable trust (*Estate of Gramespacher,* 189 Cal.App.2d 805 [11 Cal.Rptr. 437]; *Estate of Goyette, supra,* 258 Cal.App.2d 768) unless and until an intestacy exists as to the excess of the estate left to charity.

■ Thus, appellant had no standing to complain of the disposition to respondents until after the shares of the niece and nephew had been declared forfeited. This created an intestacy; however, this intestacy was not created until the order for preliminary distribution was made applying the in terrorem clause of the will. ■ But even prior to the entry of this order, appellant had asserted his rights by the filing of his petition to determine heirship. He thus cannot be said to have delayed in asserting his rights.

■ Nor can it fairly be contended that appellant should have secured a determination of his rights prior to the distribution to the trust.

Where a trust is created by a will, it often is impossible at the time of commencement of the trust to determine whether the value of the bequests to the charities exceeds one-third of the estate. Factors such as the existence of contingent beneficiaries of the trust, the amounts inheritable by legatees of the trust or by legatees of the trust residuum, make predetermination of violation of Probate Code section 41 actually impossible until the termination of the trust. (See *Estate of Nicely, supra,* 235 Cal.App.2d 174 at p. 183 and cases cited therein.) The instant case is an example of such impossibility. Here we have the factor of undeterminable values, since real property is the corpus of the trust estate; we also have the impossibility of determining when the events of the marriage or death of the last of the two income beneficiaries would terminate the trust. Although life expectancy tables can give some information as to when a life estate may terminate through death, no tables can give us information as to when such an estate may terminate

through marriage. Thus, the value of the gift over to charity could not be calculated at the time of commencement of the trust herein.

Numerous cases hold that where at the time of distribution it is impossible to determine the question of whether a charitable trust violates the provisions of section 41, the court may reserve jurisdiction to make this determination at the time of the termination of the trust (*Estate of Hughes,* 202 Cal.App.2d 12 [20 Cal.Rptr. 475]; *Estate of Reardon,* 243 Cal.App.2d 221 [52 Cal.Rptr. 68]). It has also been held that once the claim has been asserted, the heir may decide at a later time whether to press it.[3]

██   Nor did the entry of the preliminary order in this case operate to foreclose appellant's theretofore asserted rights. Respondents cite language stating that "[a] preliminary or partial decree of distribution which has become final is a conclusive determination of the rights of all parties under a testamentary trust even if erroneous." (*Estate of Adams,* 164 Cal.App.2d 698, 702 [331 P.2d 149 ].) But the decree may only be made under the conditions set forth in the Probate Code sections 1000 and 1001. Section 1001 requires that it appear at the hearing on a petition for preliminary distribution that the ". . . legacy, devise or share of the estate or any portion thereof may be distributed without loss to the creditors or injury to the estate or any person interested therein. . . ." In *Estate of Stephenson,* 65 Cal.App.2d 120, 123-124 [150 P.2d 222], the court said: "The Probate Code clearly gives power to the court to order a partial distribution of an estate and, given the prescribed conditions, it is made mandatory upon the court to make the order. But to exercise that power accurately it is necessary that it first be determined what persons are entitled to the order and what portion or portions of the estate should be distributed to them."

In the instant case the court had on file at the time of making the order for preliminary distribution the claim of appellant in his petition to determine heirship. At the hearing on the petition for preliminary distribution respondents had agreed that the issue of violation of Probate Code section 41 could not be determined until the termination of the trust. In its decree the court stated ". . . that the preliminary distribution . . . can now be made to

---

[3]In *Estate of Hughes, supra,* 202 Cal.App.2d 12, 18, the court says: "Moreover, the preferred heir may, as a personal choice, decide to waive the provisions of section 41 of the Probate Code. It seems right that although the claim must be asserted promptly in order to preserve it (*Estate of Bunn, supra* [33 Cal.2d 897]), choice should still be reserved to the claimant *alone,* when the time comes, if it ever does, when the charitable donations actually do exceed the one-third. If the heir survives the trust, she may then decide, because of the character of the estate at that time, because of the nature of the charities, or because of her own condition of health or of finances, either to press her claim or to waive it. This quite personal decision is referred to in *Estate of Bunn, supra,* at page 901, and in cases collected in 154 American Law Reports 689-691. . . ."

the trust estate . . . without . . . injury to the estate or any person interested therein. . . ." The only way there could be no loss to any person would be if the rights of appellant were preserved for future determination. ██ "The decree of [preliminary] distribution should be interpreted in view of the law applicable to the subject matter, the parties, and the circumstances." (*Trowbridge* v. *Love,* 58 Cal.App.2d 746, 751 [137 P.2d 890].)[4] ██ Interpreting the decree in this light, we must reach the conclusion that the quoted language of the decree contemplated a reservation of jurisdiction to determine the validity of appellant's claim, and that the court did not intend to foreclose appellant's claim by making final distribution from the trust without reservation.

██ Respondents further contend that appellant *waived* his rights under Probate Code section 41 by not taking action after the entry of the preliminary order. To the contrary, appellant had promptly filed his petition to determine heirship before the hearing on the petition for preliminary distribution; respondents had made it a matter of record at the hearing on preliminary distribution that they agreed that the values affecting the issue of violation of section 41 could not be determined until the termination of the trust; and, thereafter, when respondents filed their petition to terminate the trust, appellant promptly filed his answer asserting his rights and claims in response thereto. ██ "Waiver is a voluntary act and implies an abandonment of a right that could be enforced or a privilege that could be exercised. . . ." (51 Cal.Jur.2d, Waiver, § 3, p. 308.) ██ In this case, there was never a time after the filing of the petition to determine heirship when ap-

---

[4]An example of appropriate interpretation is found in this very case. In the preliminary decree the residuum of the trust was distributed as follows:

"(a) *One-Fourth* thereof to Diocese of Monterey-Fresno Education & Welfare Corporation, a corporation . . . .

"(b) One-Tenth thereof to Diocese of Monterey-Fresno Education & Welfare Corporation, a corporation . . . .

"(c) One-Tenth thereof to The Roman Catholic Bishop of Monterey-Fresno, a corporation sole . . . .

"(d) One-Fifth thereof to The Poor Sisters of Nazareth of Fresno . . . .

"(e) One-Fifth thereof to The Poor Sisters of Nazareth of Los Angeles . . . .

"(f) *One-Fifth* thereof to The Poor Sisters of Nazareth of San Diego . . . ." (Italics added.)

This was not in accord with the provision of the will, which left *one-fifth* to the first named beneficiary. It also resulted in a division of the residuum totaling 21/20ths or 105 percent thereof. The error was repeated in an amended decree of partial distribution dated February 28, 1967, of which this court takes judicial notice.

In the petition for order directing termination of testamentary trust, the respondents recite that by its preliminary order the court distributed the residuum as above, except that they recite erroneously that *one-fifth* was directed to go to the first named beneficiary. In its order directing termination of the trust, the court found the allegations of the petition true and correct and directed distribution in accordance with the will *and* preliminary order. Thus, the error was apparently corrected without specifically modifying the obviously erroneous preliminary order.

pellant did not have a pending assertion of record in the case of his claim. Nothing was ever done by appellant implying an abandonment of this claim.

The agreement of counsel for respondents with counsel for appellants at the hearing of the Ariey and Ijams objections[5] is of itself a reason for finding no waiver on the part of appellant. Although this agreement was made with appellant's counsel in their capacity as attorneys for other interests, appellant could have believed and relied on it as a statement of position binding upon respondents. It might even be argued that respondents knew or should have known that appellant would rely on this agreement and would therefore not insist upon action on his heirship petition until the termination of the trust, and that an estoppel was thereby created.

But a more compelling ground for holding that appellant's claim should now be determined is that where, as here, there is a pending petition to determine heirship, which raises the issue of possible violation of Probate Code section 41, and the court distributes property to a trust without determining this issue, it is deemed that the court reserved jurisdiction to settle the issue until the time of the termination of the trust. To hold otherwise would be to lay a trap for innocent parties who, because of circumstances preventing such a determination at the time of commencement of the trust, are led to believe their rights are protected by the placing of their claims before the court.

No objection has been made to that portion of the orders of the court terminating the trust, and it is clear that a trust such as this, not being a spendthrift trust, may be terminated by agreement (*Estate of Nicely, supra,* 235 Cal.App.2d 174).

The order of the trial court striking appellant's answer is reversed and annulled. The order directing termination of the testamentary trust and for distribution of the trust estate is modified as follows:

Said order is affirmed insofar as it declares the trust terminated, and reversed as to the distribution of the trust estate with directions to the trial court to determine the affirmative issues raised by appellant's answer under

---

[5]We refer to the statement of the agreement of the parties (*supra*) that the value of the bequests can only be determined at the time of distribution of the trust. This agreement was never acted upon because the Ariey and Ijams claims were not sustained. Nevertheless, the agreement to this fact by respondents remains as a statement of their then position.

the provisions of Probate Code section 41 and then order distribution in accordance with its determination.

Appellant shall have his costs on this appeal.

Stone, P. J., and Gargano, J., concurred.

A petition for a rehearing was denied February 2, 1971, and the opinion was modified to read as printed above. Respondents' petition for a hearing by the Supreme Court was denied March 26, 1971.