## BLANCHARD v. LAMBERT ET AL.

1. **Marriage**: BEFORE FORMAL DISSOLUTION OF PRIOR MARRIAGE. Where a husband and wife separate and the former lives and cohabits for years with a woman whom he claims, and who is reputed, to be his wife, the law presumes a divorce from the first wife, and the latter may legally marry again.

2. ———: SUBSEQUENT MARRIAGE: PRESUMPTION IN FAVOR OF. If the marriage was originally void, subsequent marriage will be presumed to have occurred, if the parties continued to cohabit together after the removal of the legal impediment.

3. ———: WHAT WILL CONSTITUTE. Any mutual agreement between the parties to be husband and wife *in presenti*, followed by cohabitation, constitutes a valid and binding marriage, if the parties are under no legal disability to contract matrimony.

*Appeal from Fremont Circuit Court.*

TUESDAY, JUNE 6.

AT the April term, 1873, of the Fremont Circuit Court the plaintiff filed her petition, alleging that she is the lawful widow of I. D. Blanchard, deceased; that he died seized of certain lands described, and asking that commissioners be appointed to admeasure her dower therein.

The defendants, McKinney Lambert, executor, and the heirs-at-law of said estate, filed their answer, in substance alleging that plaintiff was never legally married to said deceased; that at the date of her said alleged marriage she was legally incompetent to contract marriage, being then the lawful wife of one Horatio N. Musgrave, to whom she was married on or about the 24th day of May, 1857.

The reply denies the allegations of the answer. The court found that plaintiff is entitled to dower in the lands described, and appointed referees to assign the same. Defendants appeal.

*A. R. Anderson* and *Stowe & Hammond*, for appellants.

*E. H. Sears* and *Mitchell & Lehman*, for appellee.

DAY, J.—The evidence shows the following state of facts: The plaintiff's name was formerly Mrs. E. K. Lord. On the

24th day of May, 1857, in Hardin county, Ohio, she married Horatio N. Musgrave, and soon thereafter moved with him to Indiana, and cohabited with him as his wife about one year. They both returned to Ohio about the same time and lived in the same county, but not as man and wife. Some years before plaintiff left Ohio, it was reported that Musgrave was married and he lived with a woman as his wife. Plaintiff lived near by and knew these facts.

In March, 1867, plaintiff, under the name of E. K. Lord, married I. D. Blanchard. She lived with him as his wife until his death, August 14, 1872. She was treated in the community and by her husband with respect, and both she and her husband were of good fame and reputation. Musgrave died in June, 1871.

The action of the court below was clearly right, and should be affirmed, upon two grounds.

I. The plaintiff and her former husband, Musgrave, must have separated as early as May, 1858, and there is no evidence that they ever cohabited together as husband and wife after that time. The plaintiff did not marry Blanchard until March, 1867, nearly nine years after her separation from Musgrave. For several years prior to this time Musgrave was living with a woman who claimed to be, whom he claimed to be, and who was reputed to be, his wife. The law presumes that this cohabitation of Musgrave was lawful and not criminal, and that he had obtained a divorce from plaintiff. The case of *Carroll v. Carroll*, 20 Texas, 731, is directly in point. That case involved the legality of the marriage of the defendant, Susan Carroll, with the deceased, Nathaniel Carroll, and arose, as does this, out of the claim of the alleged widow to a share of her husband's estate. It was objected that the marriage was void, because the deceased, Nathaniel, at the time of his marriage with Susan, had a wife living, which fact was known to Susan, the defendant. It was proved that Nathaniel had been separated from his former wife about eight years, and that she had married again more than two years prior to the marriage between Susan and Nathaniel. There was no evidence that the first

*(margin note: 1. MARRIAGE: before formal dissolution of former marriage.)*

wife of deceased had obtained a divorce prior to her second marriage. But it was held that the law in favor of innocence would raise a presumption that such a divorce had been obtained. That case is, in principle, in all respects like the one at bar. There are other cases which illustrate the force of the presumption of innocence, and show how it overrides opposing presumptions. In the case of *The King v. The Inhabitants of Twining*, 2 B. & Ald., 387, it was held that the law always presumes against the commission of crime, and that a woman who married within twelve months after her husband left the country, would be presumed to be innocent of bigamy, the presumption of innocence preponderating over that of the life of the husband.

In *Yates v. Houston*, 3 Texas, 433 (449), where the husband and former wife separated in 1818, and he cohabited with another woman as his wife from 1822 to the time of his death, his former wife not having been heard of during the four years preceding the commencement of the cohabitation, it was held that the ordinary presumption in favor of the continuance of human life should not, under the facts of the case, outweigh the presumption in favor of the innocence of their cohabitation, and that there was no legal impediment to their contracting the matrimonial relation. In *Lockhart v. White*, 18 Texas, 102, the same doctrine was announced. These decisions are in entire harmony with the spirit and policy of the law, and they fully sustain the action of the court below.

II. Musgrave died in June, 1871. The plaintiff and Blanchard after this time continued to live together as husband and wife, until his death in August, 1872. During this time Blanchard introduced the plaintiff as his wife; he called her "ma" when speaking to one of the family; when speaking to strangers he called her "his wife." They lived happily together, and treated each other with mutual respect. During the last illness of deceased, which lasted about ten months, the plaintiff sat up with and waited on him, and in all respects treated him as a lady would her husband. She was treated in the community with respect, and was recognized as the wife

of deceased. Blanchard made a will in which he mentions plaintiff as his wife, and bequeaths to her the homestead of 200 acres, and 40 acres of timber contiguous thereto, during her natural life, provided she remains his widow.

Under these circumstances, even if the marriage were origi-

3. ——: what nally void, a subsequent marriage will be pre-
will consti-
tute.        sumed to have occurred after the removal of all legal impediments by the death of Musgrave in June, 1871. It is a settled rule of the common law that any mutual agreement between the parties to be husband and wife, *in presenti*, followed by cohabitation, constitute a valid and binding marriage, if there is no legal disability on the part of either to contract matrimony. (*Rose v. Clark*, 8 Paige's Chancery Rep., 573–579.) Chapter 102 of the Revision provides the manner of solemnizing marriages in this State. Section 2526 provides that marriages solemnized, with the consent of parties, in any other manner than as prescribed in that chapter, are valid; but the parties themselves, and all other persons aiding or abetting, shall forfeit to the school fund the sum of fifty dollars each. So that in this State no express form is necessary, more than at common law, to constitute a valid marriage.

In the case of *Fenton v. Reed*, 4 Johnson, 51, it appeared that the party claiming to be the widow of William Reed, deceased, was, in the year 1785, the lawful wife of John Guest. In that year Guest left the State for foreign parts, and continued absent until the year 1792, and it was reported and generally believed that he had died in foreign parts. In 1792 the wife of Guest married Reed. In that year, but subsequent to the marriage, Guest returned to the State and continued to reside therein until the year 1800, when he died. Reed and defendant continued to cohabit together, and maintained a good reputation in society, until 1806, when Reed died. No solemnization of marriage was proved to have taken place subsequently to the death of Guest. Upon these facts it was held the court below was warranted in presuming a marriage after the death of Guest. In *Rose v. Clark*, 8 Paige's Chancery Rep., 573, it was held that a subsequent

marriage may be inferred from acts of recognition, continued matrimonial cohabitation and general reputation, even where the parties originally came together under a void contract of marriage.

In *Jackson v. Claw*, 18 Johnson, 347, the same doctrine was announced. See, also, *Starr v. Peck*, 1 Hill, 270.

The case of *Wilkinson v. Payne*, 4 Durn. & East's Rep., 468, went still further in the doctrine of presumption. In that case the husband was under age at the time the ceremony was performed, his parents were dead and he had no legal guardian to consent to the marriage; and, under the English marriage acts, the marriage was absolutely void. When he became of age his wife was upon her death bed, and she died in three weeks from that time. But upon proof that the father of the wife, who was the defendant in the suit, and the rest of his family, had always treated them as husband and wife, it was left to the jury to presume a legal marriage after the husband was of age, and they did so. The Court of King's Bench refused to disturb their verdict.

In addition to all this, Sec. 1, Chap. 151, Laws of 1862, which is an amendment of Sec. 2477 of the Revision, and was in force at the time of the death of Blanchard and of the commencement of this action, provides that continuous cohabitation as husband and wife is presumptive evidence of marriage, for the purpose of giving the right of dower. The judgment of the court below is

AFFIRMED.