EMILY BARNES, Appellant, v. MARY E. BARNES *et al.*

Marriage: Presumption of Divorce. Where the records of the counties in which a man and wife have lived show no divorce, divorce is not presumed for the woman because both marry again, there being no proof that the husband ever lived with the second wife. (2)

SAME. Where the evidence tends to show that the wife's second marriage was in bad faith and her second husband abandoned by her, there is no presumption that she was legally married to the second after the death of the first husband. (3) *Blanchard v. Lambert*, 43 Iowa, 228, and *Ellis v. Ellis*, 58 Iowa, 720, *distinguished; Gilman v. Sheets*, 78 Iowa, 500, *followed*.

*Appeal from Blackhawk District Court.*—HON. D. J. LENEHAN, Judge.

SATURDAY, FEBRUARY 3, 1894.

ACTION in equity for a partition of certain real estate of which Ezra Barnes died seised. The plaintiff claims to be the widow of said deceased, and, as such, entitled to a distributive share in said real estate. The defendant, Mary E. Barnes, claims to be the widow of said deceased, and to be entitled to all of said real estate, under the last will and testament of said Ezra Barnes, deceased. Decree was entered dismissing plaintiff's petition, and for costs, from which she appeals.—*Affirmed.*

*Boies, Couch & Boies* for appellant.

*O. C. Miller* and *Mullan & Pickett* for appellees.

GIVEN, J.—I. The contention is not as to which of these parties is the widow of Ezra Barnes, deceased, but whether the plaintiff is his widow. The defendant is entitled to take under the will, though she be not the widow of Ezra Barnes; but, if the plaintiff is such

widow, then the defendant takes under the will, subject
to plaintiff's right to a distributive share.   Our single
inquiry, then, is whether or not the plaintiff is the
widow of Ezra Barnes.   To be such widow, she must
have been his lawful wife at the time of his death.   The
contention as to the plaintiff's rights rests upon the fol-
lowing facts, fully established by the evidence:   On
October 5, 1854, the plaintiff, then Emily Bruce, was
married to John Weidman, at Monroe, Green county,
Wisconsin.   At the time of this marriage, they were
both residents of Stevenson county, Illinois, to which
they returned.   From there they went to Ogle county,
where they continued to live together as husband and
wife for about two years after their marriage.   For
some cause that does not appear, they then separated,
and never after lived together.   After their separation,
plaintiff came with her parents to Iowa, and soon there-
after Weidman went to Sauk county, Wisconsin, where
he continued to reside until April, 1861, when he enlisted
in the army.   Plaintiff filed her petition in the district
court of Benton county, Iowa, asking a divorce from
Weidman, on the ground of desertion, in which case
the following entry was made:   "Now, to wit, October
22, 1858, comes the plaintiff, and files proof of publica-
tion, and, upon the suggestion of the death of John
Weidman, said plaintiff moves the court to dismiss
said cause, which is accordingly done, at plaintiff's
costs."   John Weidman was killed in battle, Septem-
ber 14, 1862.   In September, 1858, the plaintiff and
deceased, Ezra Barnes, were married, in Benton
county, Iowa, and thereafter lived together and treated
each other as husband and wife until 1869 or 1870,
when a difference arose between them, and they sepa-
rated, the plaintiff going to Missouri, and they ever
after lived apart.   In 1869 a child was born to plain-
tiff.   In 1859 or 1860, John Weidman and Belle Coplin
were married in Wisconsin, but it does not appear

whether they afterwards lived together as husband and wife or not. It further appears that on January 2, 1870, the defendant, Mary E. Barnes, then Mary E. Livingston, was married to the deceased, Ezra Barnes, at Blackhawk county, Iowa, and that they lived together as husband and wife, and treated and recognized each other as such, up to the death of Ezra Barnes, July 1, 1890. Ezra Barnes left a will, which has been duly probated, devising all his property, both real and personal, to the defendant, Mary E. Barnes. It is shown in evidence in what counties the plaintiff and John Weidman resided after their marriage, and that no record of any divorce dissolving said marriage was found in the proper records of either of said counties.

II. It is entirely clear that, unless plaintiff's marriage to Weidman had been dissolved before her marriage to Barnes, the latter marriage was illegal, and, if so, that she was not the lawful wife of Barnes, and consequently not his widow, by virtue of that marriage. Plaintiff does not produce any evidence of a divorce having been granted · dissolving her marriage with Weidman, nor is it claimed that Weidman was dead at the time of her marriage to Barnes. Plaintiff's first contention is that under the authority of *Blanchard v. Lambert*, 43 Iowa, 228, the law will presume a divorce dissolving the marital relation between plaintiff and Weidman prior to plaintiff's marriage with deceased, from the fact that both she and Weidman thereafter married. In that case the plaintiff and her former husband, Musgrave, separated in 1858, and the plaintiff married Blanchard nearly nine years thereafter. For several years prior, Musgrave was living with a woman who claimed and whom he claimed to be, and who was reputed to be, his wife. The plaintiff lived near by, and knew these facts. Upon these facts, the court says: "The law presumes that this cohabitation of Musgrave was legal, and not criminal, and that he had

obtained a divorce from plaintiff.'' The facts upon which that presumption was based are quite different from the facts in this case. In that, Musgrave had lived with and recognized the second woman as his wife, to the knowledge of the plaintiff, before her marriage to Blanchard; in this, the plaintiff's husband, Weidman, did not marry Belle Coplin until after plaintiff's marriage to Barnes, and it is not shown that he ever lived with Belle Coplin, or recognized her as his wife, or that this plaintiff ever knew of that marriage during the time she lived with Barnes. There was no evidence whatever in that case to negative the presumption that Musgrave had obtained a divorce, while in this it is shown by the records of each county in which Weidman and the plaintiff had resided that no divorce had been obtained therein. This evidence is not conclusive, as it is possible that a divorce might have been obtained elsewhere, but it is certainly sufficient to rebut the presumption that a divorce had been granted, and especially when that presumption has no better foundation than the facts in this case. *Ellis v. Ellis*, 58 Iowa, 720, 13 N. W. Rep. 65, is also cited.

In that case the plaintiff and Myron Ellis were duly married, and lived together as husband and wife. Without any known cause, other than a desire to change their places of residence, they separated, he coming from Canada to this country. They never after lived together, but from time to time she received letters from Myron Ellis, the last being in September, 1868, in which he inclosed her fifty dollars. In his letters he treated the marital relation as existing between them. In 1871, Myron Ellis married Jennie Meader, with whom he lived as his wife until her death, and in 1878 married the defendant, with whom he lived as his wife until his death, in 1880. This court, distinguishing the facts from those in *Blanchard v. Lambert, supra,* held the plaintiff to be the widow of

Myron Ellis. The court says: "We are not prepared to say, under the circumstances, that a presumption should be indulged that Myron Ellis had procured a divorce, and thus invalidate the first marriage. It seems to us there must be some fact upon which the presumption can be legitimately found. * * * Now, the only thing or act done by Ellis or the plaintiff upon which it can be claimed there should be a presumption a divorce had been obtained is the subsequent marriage of Ellis. We feel constrained to say this is not sufficient, and the court erred in holding the defendant was the widow of Myron Ellis, and the court should have held that plaintiff was such widow." Applying this reasoning to the case in hand, we should not presume that John Weidman had obtained a divorce simply from the fact of his marriage to Belle Coplin. *Gilman v. Sheets*, 78 Iowa, 500, 43 N. W. Rep. 299, a case somewhat similar to this, held that a divorce would not be presumed under its facts. We are clearly of the opinion that any presumption that might arise under the other facts of this case is fully rebutted by the evidence that no divorce was granted between Weidman and the plaintiff in any of the counties in which they resided.

III. Plaintiff, again relying upon *Blanchard v. Lambert, supra,* contends that "when a contract of marriage entered into in good faith is void in its inception, by reason of the existence of some legal impediment to marriage, which legal impediment is thereafter removed, and the parties, subsequent to that time, continue to cohabit, the law will presume a marriage upon the removal of such legal impediment, provided such cohabitation was so continued where a marriage might have been consummated under the common law rule." It is conceded that there are some authorities holding that a presumption of marriage will not be indulged from cohabitation, though continued when all impediments to marriage are removed, if the parties

are shown in the beginning to have chosen unlawful and illicit relations with each other, instead of lawful marriage. We must again notice the marked distinction that exists between this and the cited case. In that, Musgrave died in June, 1871. The plaintiff and Blanchard, to whom she had been previously married, and with whom she had lived as a wife, continued to live together as husband and wife until Blanchard's death, in 1872. "During this time, Blanchard introduced the plaintiff as his wife. He called her 'ma' when speaking to one of the family, and, when speaking to strangers, he called her his wife. They lived happily together, and treated each other with mutual respect. During the last illness of deceased, which lasted about ten months, the plaintiff sat up with and waited on him, and in all respects treated him as a lady would her husband. She was treated in the community with respect, and was recognized as the wife of deceased. Blanchard made a will, in which he mentions plaintiff as his wife, and bequeaths to her the homestead." "Under these circumstances," says the court, "even if the marriage were originally void, a subsequent marriage will be presumed to have occurred after the removal of all legal impediments by the death of Musgrave." In that case the plaintiff and Blanchard were married in good faith, under the warranted presumption that Musgrave had procured a divorce, and, in the helpful and happy relations mentioned, continued to live together as husband and wife up to the death of Mr. Blanchard. In this case it may well be questioned whether plaintiff's marriage to Barnes was in good faith. She knew of her former marriage, and, so far as appears, had no reason to believe that her husband was either dead or divorced. Her suggestion of his death as a reason for dismissing her petition for divorce was not warranted by the facts, for Weidman was then living, nor does plaintiff show any

reason for then representing him as dead. We are inclined to think that the proceeding was to get the suggestion on record as a kind of justification to plaintiff to marry again. Unlike Mrs. Blanchard, this plaintiff did not continue to live in peaceful, happy, and helpful relations with Barnes until his death, but, on the contrary, years before, left him, and went to another state to reside, not knowing, or caring to know, so far as appears, anything further about him. There is evidence as to the cause of their separation, but its admissibility is questioned, and we do not, therefore, consider it. We are strongly inclined to the belief that plaintiff's marriage to Barnes was not in good faith; that their relations were unlawful and illicit, and therefore a subsequent marriage after the death of Weidman can not be presumed. It is surely not the purpose of the law to sanction the cohabitation of those who go together under the forms of marriage, knowing that they are legally disqualified, by presuming a legal marriage from continued cohabitation after the removal of the impediment to their legal marriage. Our conclusion is that the decree of the district court should be AFFIRMED.