[L. A. No. 9972. Department One.—March 8, 1928.]

In the Matter of the Estate of ANNIE MORGAN, Deceased. M. C. TINSLEY, Contestant, Respondent and Appellant, v. SUSAN O. CASEY et al., Proponents, Appellants and Respondents.

Geo. W. Busch and E. C. Jennings for Appellants.

Charles S. Darden and Hugh E. MacBeth for Respondent.

CURTIS, J.—Annie Morgan died intestate, leaving an estate consisting of real and personal property situated in the county of Los Angeles and valued at the sum of five thousand dollars or thereabouts. The appellant Susan O. Casey, claiming to be the half-sister of said deceased and her next of kin, waived her right to be appointed administratrix of her estate, and upon her written renunciation and request one J. H. Shackelford was appointed administrator of her estate. He qualified as such administrator, and after proceedings duly had therein he in due time filed his final account and petition of distribution. In the latter instrument he asked that the whole of said estate be distributed to the said Susan O. Casey, as the sole heir at law of said deceased. After the filing of said petition for distribution and before the hearing thereon the appellant, M. C. Tinsley, filed a second petition for distribution of the estate of said deceased. In her petition the said M. C. Tinsley denied that said Susan O. Casey was the half-sister of the said Annie Morgan, and alleged that the real and personal property owned by said deceased at the time of her death was the

community property of the said Annie Morgan and her deceased husband, Ephrian Morgan, who had predeceased the said Annie Morgan; that said M. C. Tinsley was the daughter of said Ephrian Morgan by a former marriage; that Ephrian Morgan died, leaving as his sole heirs at law the said Annie Morgan, his surviving wife, and petitioner, M. C. Tinsley, his daughter; that said Annie Morgan received said property as community property from her deceased spouse, the said Ephrian Morgan; and that after the receipt of said property as aforesaid, the said Annie Morgan died, leaving no issue. The two petitions for distribution came on for hearing upon the allegations contained therein and upon the answer filed by said Susan O. Casey to the petition of said M. C. Tinsley, in which said Susan O. Casey denied that the property of said estate was the community property of Ephrian Morgan, deceased, and alleged that the same was for a valuable consideration sold and conveyed to said Annie Morgan by the said Ephrian Morgan on the twenty-fourth day of May, 1917, over four months prior to the death of said Ephrian Morgan. Upon the evidence adduced by the respective parties on this hearing the court found: "That Susan O. Casey failed to establish that she was the sister of Annie Morgan, deceased, and that therefore she is not entitled to have the estate distributed to her; that the property of said deceased was her separate property at the time of her death, and that she left no heirs, and that said estate escheats to the state of California for the support of the common schools, and distribution is ordered accordingly." Pursuant to this finding the property of said estate was by said decree distributed to the state of California for the support of the common schools of the state. From this decree Susan O. Casey and M. C. Tinsley have each perfected a separate appeal to this court. ■ The appellant M. C. Tinsley has also appealed from an order denying her motion for a new trial, but as no appeal lies from an order denying a moton for a new trial, this appeal is dismissed. (Sec. 939, Code Civ. Proc.)

■ The administrator of the estate, J. H. Shackelford, has joined with Susan O. Casey in her appeal. But as between the parties interested in the estate it is the rule that administrators or executors are not affected by a decree of

distribution distributing the estate to either or any of said parties, and therefore he will not be heard on appeal from such decree. (*Estate of Ross*, 179 Cal. 358 [182 Pac. 303]; *Estate of Ayers*, 175 Cal. 187 [165 Pac. 528].) The appeal of the administrator is also dismissed.

We will now consider the appeal of Susan O. Casey. As already stated, her right to the estate of Annie Morgan, deceased, is based upon her claim that she was the half-sister of the deceased. The court found that she had failed to establish this claim, and her only point on this appeal is that the evidence fails to support this finding. Or, to put her contention on this appeal in another way, said Susan O. Casey claims that the evidence shows substantially and without conflict that she was the half-sister of the deceased.

The parentage of both the deceased and the appellant Susan O. Casey is obscured by the lapse of time and the peculiar and somewhat unusual and unsettled conditions prevailing at the time and place of their respective births. Without attempting to set forth the evidence in minute detail, that in behalf of Susan O. Casey tends to show that each of these women had a common father, but different mothers. Their father's name was John McMorris, who was a white man. There is no evidence, however, that John McMorris was ever married to either of the two women, who were the mothers of Annie Morgan and Susan O. Casey, respectively. The deceased, Annie Morgan, was born at Woodville, Mississippi, on June 15, 1858. Her mother was a mulatto and died when Annie Morgan was about three years of age, when she was taken to be raised by the mother of Susan O. Casey. The latter was born at New Orleans, Louisiana, December 5, 1864. Her mother was also a mulatto. For some years after her birth she lived with her mother's parents in Woodville, Mississippi, but when about eleven years of age she was taken by her mother into the latter's home in New Orleans. She was known as Susie McMorris, and Annie Morgan was then known as Annie McMorris. The mother of Susie told her that she and Annie were sisters, and that John McMorris was the father of each of them, but that they had different mothers. They as girls were known by their relatives, friends, and intimate acquaintances as sisters. There is at least some evi-

dence in the record that the father, John McMorris, lived with the mother of appellant Susan O. Casey in a home provided by him in New Orleans, and that their relation toward each other was that of husband and wife. During this time Annie Morgan, then a small child, lived with her father and the mother of Mrs. Casey in their New Orleans home, was known as Annie McMorris, and was recognized by McMorris as his child. McMorris during this time often spoke of Susan O. Casey, who was still with her grandparents in Woodville, as his daughter, and sent money to the grandparents to pay for the care and support of Susie. It does not appear that Susie ever lived with her mother while the latter was living with McMorris at New Orleans, which extended over a period of probably five years. While it is not entirely clear from the evidence, we think it may be gained therefrom that McMorris left New Orleans and returned to Woodville, Mississippi, shortly before his death. At some time subsequent thereto, and when Susie McMorris was about eleven years of age, her mother went to Woodville and brought her back to New Orleans, where she lived with her mother and Annie McMorris. The testimony of Mrs. Casey covering this and subsequent periods of her life was substantially as follows: ''When I was eleven years old she (my mother) came back to Woodville and got me and taken me along, and then Mrs. Morgan and I were reared up from that time on and we never lived a year apart out of the same. When we were in childhood my name was Susan Oleta McMorris and her name was Annie McMorris and we addressed each other as Susie and Annie, and called each other 'sisters' whenever we had occasion to. We were reared up together as two sisters. My mother taken Annie when she was a little over three years old and had her from that time on. The occasion of my mother taking Mrs. Morgan was because her mother and my mother were chums in their early days, and when her mother died she asked my mother to take Mrs. Morgan and raise her as her child. This relationship existed until the breath left her body. We lived in New Orleans until she married Mr. Morgan and then she went to St. Louis and in August before she was married I came to California and it wasn't long after that she came out here.'' Numerous other witnesses,

some of whom knew these two women when they were girls together and before the marriage of either, others whose acquaintance with them covered more recent years including the last years of Annie Morgan's life, corroborated Mrs. Casey's testimony to the effect that they were known by their friends and acquaintances as sisters, and that they addressed each other as sisters and always acted toward each other as sisters. During the latter years of Mrs. Morgan's life, and after the death of her husband, she appeared to be in needy circumstances, and the evidence shows that Mrs. Casey, out of her meager earnings gained in doing house cleaning and scrubbing, contributed regularly to the support of Mrs. Morgan, both in food and other necessities of life, as well as in money, under the impression, apparently, that the latter was without money or property to support herself. There was also evidence that Annie Morgan, at different and frequent occasions during her whole lifetime, stated to others and habitually admitted that she and the appellant, Susan O. Casey, were sisters. Whether this evidence was legally sufficient to support the claim of appellant Susan O. Casey that she was entitled to succeed to the estate of Annie Morgan, deceased, by virtue of the fact that she was the half-sister of said deceased, need not, we think, be here decided. Its decision would involve a number of interesting and intricate legal questions, which were evidently not considered by the trial court and which have been the subject of only slight discussion or consideration by the respective parties in their briefs. ■ It is claimed, however, by appellant Susan O. Casey that while there was no evidence that her father was married either to the mother of Annie Morgan or the mother of appellant Susan O. Casey, yet under the presumptions enumerated in subdivisions 28, 30, 31, and 33 of section 1963 of the Code of Civil Procedure, and particularly under said subdivision 30, ''That a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage,'' it might be presumed from the evidence that the father of the appellant was married to one or both of these mothers of the appellants. While a presumption of marriage of a man and woman may be indulged in from their conduct under certain conditions, we do not think we would

be warranted in so presuming under the evidence adduced in this particular proceeding. The evidence shows that the father was a white person and that the two women, whom we are asked to presume that he married, were mulattoes. It has been the law of this state from its earliest days, and long before either Annie Morgan or Susan O. Casey was born, that a marriage between a white person and a mulatto was illegal. In the absence of any evidence to the contrary we must presume that the laws of the state of Mississippi and Louisiana are and were the same. With an express statutory inhibition against a marriage between persons of these two races, no presumption can be indulged in that this law was violated and a marriage entered into between these parties.

Should we assume that the above evidence was sufficient to maintain the claim of appellant, Susan O. Casey, to have distributed to her the property of said estate, there was on behalf of the appellant, M. C. Tinsley, who had in her petition for distribution denied that the deceased and Susan O. Casey were sisters, evidence adduced for the purpose of disproving this claim of Susan O. Casey. This evidence, like that in favor of Susan O. Casey, consisted in the main of declarations of the deceased and of statements purporting to have been made by the said Susan O. Casey, in which she claimed that she was the cousin of the deceased. The appellant, M. C. Tinsley, testified that Annie Morgan had always addressed Mrs. Casey as her cousin. "She never addressed her as sister." "I think my father married Mrs. Morgan in 1901 or 2. She was my stepmother not my mother. I came to live in Los Angeles in 1906 and lived with them eight or nine years. I went up to San Francisco in 1913 to be married. I visited my mother and father about once a year. While I was living with Mrs. Morgan Mrs. Casey came to see my mother very often. She treated her very kind, and always addressed her as 'Sue' and Mrs. Casey addressed her as 'Annie.' My mother told me they were cousins and she said she had no blood relations on earth. She called her cousin because her mother raised her. My mother told me from the time I entered her household until she died, almost, she had not a relative on earth." A number of other witnesses testified that appellant, Mrs. Susan O. Casey,

introduced Annie Morgan as her cousin, and she was so known for years by many of her friends and acquaintances. Other witnesses testified that they had heard Mrs. Morgan during her lifetime state that she had no relatives on earth. A florist testified that immediately after the death of Annie Morgan the appellant, Susan O. Casey, came to his place of business and ordered some flowers for Mrs. Morgan's funeral; that on this occasion Mrs. Casey stated that the deceased was her cousin; that she purchased a floral piece and had a ribbon streamer placed thereon bearing the word "Cousin"; that he wrote a card at the request of Mrs. Casey and sent it with the floral piece and on the card he wrote at Mrs. Casey's direction "My dear Cousin from Susie Casey." Mrs. Casey was called in rebuttal and denied that she had ordered flowers with the word "Cousin" on the streamer and testified that she had never been introduced as Mrs. Morgan's cousin. This evidence, adduced on behalf of the appellant, Tinsley, was undoubtedly legal evidence bearing upon the question of the relationship between the deceased and the appellant, Susan O. Casey. ■ The declarations of Annie Morgan during her lifetime that she had no relations were admissible in evidence to prove that fact (subd. 4, sec. 1870, Code Civ. Proc.; *Estate of Friedman*, 178 Cal. 27 [172 Pac. 140]; *Estate of McNamara*, 181 Cal. 82 [7 A. L. R. 313, 183 Pac. 552]). There was, therefore, a substantial conflict in the evidence as to the claim of appellant that she was related to the deceased as her sister, and the finding of the probate court adverse to said appellant's contention cannot be disturbed by this court.

■ We will now return to the appeal of M. C. Tinsley, the daughter of Ephrian Morgan, deceased, from that portion of the decree of distribution, which denied the petition of this appellant to have distributed to her the property of the estate of Annie Morgan, deceased. As already stated, this petition is based upon the claim that said property was the community property of Ephrian Morgan and Annie Morgan; that Ephrian Morgan predeceased Annie Morgan; that Annie Morgan left no issue and died intestate; and that the petitioner, M. C. Tinsley, is the sole surviving child of said Ephrian Morgan, deceased. The court found that the

property belonged to the estate of Annie Morgan, deceased, was her separate property at the time of her death, and upon this finding denied the petition for distribution of the said M. C. Tinsley. There was no finding as to whether said property was or ever had been the community property of Ephrian and Annie Morgan. It might have been, in a sense, the separate property of Annie Morgan at the time of her death, and still have been the community property of herself and husband during their marriage, although strictly speaking, the term "separate property" only applies to property owned by a married person in his or her own right during marriage. After the dissolution of the marriage by death, the survivor does not hold the property, which was formerly community property, as community property. It is succeeded to as his or her property without being characterized as either separate or community property (*Estate of McCauley*, 138 Cal. 546 [71 Pac. 458]; *Estate of Davidson*, 21 Cal. App. 118 [131 Pac. 67]; 5 Cal. Jur. 284). But assuming that the term "separate property" was used in said finding in its popular sense, as distinguishing the property therein referred to from common or community property, still this finding is not sufficient to support the order or decree adverse to appellant Tinsley. For, as already observed, this property may have been, in the sense in which we have assumed that this term was used in the finding, the separate property of Annie Morgan at the time of her death, and still have been the community property of Annie Morgan and her predeceased husband, at the time of the death of the latter. If it was such community property, then under the terms of subdivision 8 of section 1386 of the Civil Code the appellant Tinsley would, under the facts shown here, have been entitled to share in its distribution. It is obvious, therefore, before the probate court could render any decree of distribution in the estate of Annie Morgan, deceased, either granting or denying the petition of appellant Tinsley, that it must determine and find whether any of the property of the estate of Annie Morgan, deceased, was at the death of Ephrian Morgan, deceased, the community property of said Ephrian and Annie Morgan. It follows, therefore, that as the court made no such finding, that the decree of distribution, in so

far as it purports to deny the petition of appellant Tinsley, must be reversed.

That portion of said decree of distribution denying the petition of appellant, Susan O. Cascy, is affirmed, and that portion of said decree denying the petition of appellant M. C. Tinsley, and distributing the whole of the property of the estate of Annie Morgan, deceased, to the state of California, is reversed, and it is directed that this proceeding be remanded to the probate court in and for the county of Los Angeles for the purpose of determining the issues made by the petition of appellant Tinsley and the answer thereto.

Preston, J., and Seawell, J., concurred.