[S. F. No. 17406.   In Bank.   Jan. 11, 1949.]

Estate of LEWIS WARREN SMITH, Deceased. BRAN-FORD BAPTIST CHURCH, Appellant, v. AMY EDITH NICHOLS, Respondent; WELLS FARGO BANK & UNION TRUST CO., as Executor, etc.

Jay A. Darwin and Clifton E. Brooks for Appellant.

Weinmann, Moffitt & Quayle and Cyril Viadro for Respondent.

TRAYNOR, J.—Lewis Warren Smith died on May 28, 1945, leaving a holographic will dated April 7, 1942. By his will he bequeathed "to my wife the sum of Five Dollars" and $500 to the widows' and orphans' fund of a lodge of Masons, and left the residue of his estate to the Branford Baptist Church of Connecticut.

Amy Edith Smith, respondent, filed a claim against the estate alleging that she is the widow of the testator. She claims that she is entitled to two-thirds of the estate on the ground that charitable bequests under section 41 of the Probate Code may not collectively exceed one-third of the estate as against the spouse of the decedent.

It is undisputed that respondent married the testator in January, 1926, and that they lived together until 1932 or 1933. It is also undisputed that in November, 1938, respondent entered into a marriage ceremony with Ralph N. Nichols, with whom she lived until May 13, 1945. After evidence was introduced relating to the marital status of respondent, the probate court found that respondent was the widow of the testator, and entered a decree of distribution, ordering that two-thirds of the residue of the estate be distributed to her. After completion of the hearing in the probate proceedings but before the entry of the decree, Ralph N. Nichols, who had previously commenced a divorce action against respondent, filed an amended complaint, in which he requested an annulment on the ground that at the time of respondent's marriage to him she was married to the testator. Neither Nichols nor respondent testified in the annulment proceeding, which was held five days after the entry of the decree of distribution in the probate proceeding. Counsel for Nichols introduced the record of the decree, whereupon the annulment was granted.

The Branford Baptist Church appeals from the decree of distribution.

■ It is well established that when a person has entered into two successive marriages, a presumption arises in favor of the validity of the second marriage, and the burden is upon the party attacking the validity of the second marriage to prove that the first marriage had not been dissolved by the death of a spouse or by divorce or had not been annulled at the time of the second marriage. (*Hunter* v. *Hunter,* 111 Cal. 261 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411]; *Wilcox* v. *Wilcox,* 171 Cal. 770, 774 [155 P. 95]; *Estate of Pusey,* 173 Cal. 141, 143 [159 P. 433]; *Estate of Hughson,* 173 Cal. 448, 452 [160 P. 548]; *Hamburgh* v. *Hys,* 22 Cal. App.2d 508, 509 [71 P.2d 301]; *Immel* v. *Dowd,* 6 Cal.App.2d 145, 147 [44 P.2d 373].) That burden is sustained if the evidence, in the light of all reasonable inferences therefrom, shows that the first marriage was not so dissolved or annulled. (*Williams* v. *Williams,* 63 Wis. 58, 66 [23 N.W. 110, 53 Am. St.Rep. 253]; *Turner* v. *Williams,* 202 Mass. 500, 505 [89 N.E. 110, 24 L.R.A. N.S. 1199]; *Schmisseur* v. *Beatrie,* 147 Ill. 210, 217 [35 N.E. 525]; *Cole* v. *Cole,* 153 Ill. 585, 587 [38 N.E. 703]; *Barnes* v. *Barnes,* 90 Iowa 282, 285 [57 N.W. 851]; *Colored Knights of Pythias* v. *Tucker,* 92 Miss. 501, 509 [46 So. 51]; *Brokeshoulder* v. *Brokeshoulder,* 84 Okla. 249 [204 P. 284, 288, 34 A.L.R. 441].) "There can be no absolute presumption against the continuance of the life of one party to a marriage, in order to establish the innocence of the other party to a subsequent marriage; much less can there be a rigid presumption of a dissolution of the first marriage by divorce, in order to make out such innocence. . . . In any particular case, the question must be determined, like any other question of fact, upon a consideration of the attending facts and circumstances, and such inferences as fairly and reasonably flow therefrom." (1 Jones, Commentaries on Evidence, 103-104.)

■ The question, therefore, is whether there was substantial evidence to support the finding of the probate court that respondent was the wife of the testator at the time of his death. Respondent testified that before her marriage to Nichols in 1938 she and Nichols visited the testator in a town near Taft, California; that the testator informed her that he had obtained a divorce and that the divorce papers were in his safe deposit box. Respondent entered into a marriage cere-

money with Nichols in reliance upon this information. Respondent further testified that after the death of the testator she made investigations in San Francisco, where she supposed that he had resided, and in Los Angeles, where she and the testator were married, but was unable to find any record of a divorce dissolving their marriage; she made similar investigations in Lake County, where the testator maintained a place for camping, and in Reno, Nevada, but no record of a divorce was discovered. Counsel for the executor stated that he had "examined the divorce records of a number of counties," but was unable to find any record of divorce in an action involving respondent and the testator. After the probate court had granted a continuance for the purpose of permitting further search, counsel for appellant made an investigation of divorce records in California. He stated that he had received reports from 56 of the 58 counties of the state, showing no record of a divorce between respondent and the testator. Respondent testified that she did not receive any divorce papers or any notice of a divorce action from the testator. Although this testimony may not in itself be sufficient, it is persuasive when considered with other evidence that respondent's marriage to the testator had not been dissolved by divorce.

The trial court could reasonably infer that had an annulment been secured the existence of such a decree would have been discovered in the search of records of the various counties of the state. Moreover, the provision in the will by which the testator bequeathed $5.00 "to my wife" precludes the conclusion that he had secured either a divorce or an annulment from respondent. Since there is no evidence that the testator had married again, the probate court could reasonably infer that he was referring to respondent by that provision.

Appellant contends that it was error for the probate court to exclude certain oral declarations of the testator. Appellant made an offer of proof to show by the testimony of three disinterested witnesses, who were close friends of the testator living in San Francisco, that the testator had made repeated statements that he was divorced from respondent and that she was his "ex-wife." Declarations of a deceased person in respect to his relationship to any person are admissible as an exception to the hearsay rule. (Code Civ. Proc., § 1890(4); *Estate of Friedman,* 178 Cal. 27, 35 [172 P. 140]; *Estate of Morgan,* 203 Cal. 569, 576 [265 P. 241]; *Estate of Strong,* 54 Cal.App.2d 604, 608-609 [129 P.2d 493].) Declara-

tions of the testator regarding his relationship to respondent were, therefore, admissible. ▇▇▇ The refusal to admit them, however, was not prejudicial, for respondent had previously testified to a similar declaration made to her by the testator. The probate court in deciding that the marriage was not dissolved may have concluded, in view of the other evidence, that the testator made such statements under a mistaken belief that he had taken all the necessary steps in obtaining a divorce.

▇▇▇ In order to show that no divorce or annulment had been obtained it is not necessary to prove that an examination was made of the public records of jurisdictions other than those in which the parties to the marriage were domiciled. (*Clendenning* v. *Parker*, 69 Cal.App. 685, 686 [231 P. 765]; *Schmisseur* v. *Beatrie, supra,* 147 Ill. 210, 217; *Barnes* v. *Barnes, supra,* 90 Iowa 282, 285; see *Immel* v. *Dowd, supra,* 6 Cal.App.2d 145, 147.) It appears from the evidence that after his marriage with respondent, the testator entered the garage business in Los Angeles and that in 1938 he was living near Taft, California. He maintained a camping place in Lake County and died in San Francisco in 1945. Although this evidence does not account for every place where the testator resided during the years following his separation from respondent, it is sufficient to support a reasonable inference that he was domiciled in California from the time of his separation from respondent until the time of his death. Appellant concedes that the testator was domiciled in San Francisco during this period. The offer of proof made by appellant for the purpose of admitting certain declarations of the testator showed that the testator had maintained his headquarters since 1930 at the Class A Garage in San Francisco, where he usually returned at the end of each fishing season; and that he lived at a near by hotel, where he had always received his mail.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. It is my view that respondent has failed to meet the burden of proving the illegality of her marriage to Nichols, that the finding of the probate court that respondent is the widow of the testator is without substantial

support in the evidence, and that the portion of the judgment appealed from should be reversed.

For what appears to me to be a logical and convincing refutation of the views taken by the majority of this court, reference is made to the opinion prepared by Mr. Presiding Justice Peters for the District Court of Appeal, First Appellate District, Division One, reported at (Cal.App.) 193 P.2d 90.

In further support of appellant's position herein, and of the conclusion reached by the District Court of Appeal, it may be pointed out that for aught that is shown in the record the testator, a sea captain, may and *must be presumed* to have secured a decree of divorce in some domestic or foreign jurisdiction, the validity of which decree respondent, by virtue of her subsequent marriage to Nichols, is now estopped to deny. (See *Kelsey* v. *Miller* (1928), 203 Cal. 61, 86-87 [263 P. 200]; *In re Kyle* (1947), 77 Cal.App.2d 634, 639-640 [176 P.2d 96].) *The domicile of the parties and the place of divorce become entirely immaterial where the party seeking to attack the divorce has remarried.* When that circumstance is shown, as it is here, if there has been a divorce *in any jurisdiction* its effect cannot be challenged by a former spouse who has accepted its benefits and remarried.

The presumption of innocence of crime is one of the strongest disputable presumptions known to the law. (See discussion and authorities cited, *infra*.) As stated by Justice Peters (p. 94 of 193 P.2d), "even if there is 'some' evidence that might be interpreted to be contrary to the presumption, it must be conceded that such evidence is very weak indeed. This being so, any error in excluding evidence that might support the presumption takes on added significance. There can be no doubt that the trial court committed error in excluding the declarations of decedent made to intimate acquaintances on numerous occasions that he was divorced from respondent, and that she was his 'ex-wife' . . . Respondent concedes, as she must, that it was error to have excluded these declarations of relationship [see Code Civ. Proc., § 1870(4); *Estate of Morgan* (1928), 203 Cal. 569 [265 P. 241]; *Estate of Friedman* (1918), 178 Cal. 27 [172 P. 140]; *Estate of Strong* (1942), 54 Cal.App.2d 604 [129 P.2d 493]], but contends that such error was not prejudicial because respondent had admitted that decedent had declared to her that he had secured a divorce and 'no amount of additional evidence to the same effect could do her so much damage as her own testi-

mony on that subject.' (Res. Br., p. 6.) In other words, the respondent contends that the rejected testimony was merely cumulative, and that its rejection was not prejudicial. This is an unrealistic approach to the question . . . [T]he probate judge seemed to be of the opinion that the burden to show a divorce rested upon appellant, and seemed to feel that that burden could only be met by record evidence of a divorce. In both assumptions the trial judge was wrong. Moreover, this respondent had to offer some reason for marrying Nichols, otherwise she would be guilty of deliberate bigamy. Smith was not here to deny her statements. Nichols, although present at the conversation, was not produced nor was his absence explained before the probate court. To say the least, the evidence as to whether there was or was not a divorce from Smith was most tenuous and uncertain, with a strong presumption that a divorce had been secured. Thus, to have excluded the decedent's own statements on this subject made to several persons on many occasions was obviously error of a most prejudicial nature.''

That the burden was on respondent to prove the illegality of her marriage to Nichols there can be no question. As previously stated, the presumption of innocence of crime is one of the strongest of the disputable presumptions known to the law. (See Code Civ. Proc., § 1963; 10 Cal.Jur. 754, 762-764, and cases there cited; see, also, *People* v. *Shorts* (1948), 32 Cal.2d 502, 507 [197 P.2d 330].) And as declared in *Estate of Hughson* (1916), 173 Cal. 448, 453 [160 P. 548], quoting from *Hunter* v. *Hunter* (1916), 111 Cal. 261, 267 [43 P. 756, 52 Am.St.Rep. 180, 31 L.R.A. 411], ''There is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage.''

Respondent here, in order to meet the burden of proving the bigamy of which she asserts she is guilty, relied in the probate court solely upon the fact that the testator in his

will left $5.00 ''to my wife,'' and upon testimony that no record had been found of a Reno divorce or of any California divorce proceedings between the parties, although search had been made in Reno and in all California counties except two. Despite the total lack of evidence that the parties had not been divorced elsewhere, and despite respondent's testimony that the testator had declared to her that a divorce had been procured by him, that service had been accomplished by publication, that he had at that time a copy of the decree in a safety deposit box, and that she was free to marry Nichols —a declaration which she accepted and upon which she acted until such time as she discovered that the testator had died leaving a substantial estate—the probate court found that she is the testator's widow. This reliance upon the words ''to my wife'' as the basis for the finding that respondent is the widow of decedent serves but to aggravate the prejudicial effect of the error in excluding the decedent's repeated declarations that she was his ''ex-wife.''

The portion of the judgment appealed from should be reversed.