Ann J. WOOLERY, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY and Maude L. Woolery, Defendants.

Civ. A. No. 75–384–A.

United States District Court, E. D. Virginia, Alexandria Division.

Jan. 22, 1976.

Darwyn A. Lesh, Fairfax, Va., for plaintiff.

C. Torrence Armstrong, Alexandria, Va., for Ins. Co.

Thomas Moncure, Alexandria, Va., for Maude L. Woolery.

## MEMORANDUM OPINION

OREN R. LEWIS, Senior District Judge.

This suit for interpleader and declaratory relief was instituted by the plaintiff to determine who was entitled to the death benefits payable under the Metropolitan Life insurance policy issued to Walter J. Woolery pursuant to the provisions of the Federal Employees Group Life Insurance Act, 5 U.S.C. § 8701 et seq.

The parties have stipulated that Walter J. Woolery, an employee of the Defense Communications Agency, died on March 12, 1975 in Bangkok, Thailand, and that he was insured for $28,000.00 by the Metropolitan Life Insurance Company under a group policy issued to the United States Civil Service Commission pursuant to the Federal Employees Group Life Insurance Act of 1954, as amended.

The plaintiff Ann J. Woolery and the codefendant Maude L. Woolery claim she is the insured's widow.

The insurance policy in question provides that if at the death of the insured there was no designated beneficiary, the proceeds of the policy would be payable to the insured's widow pursuant to 5 U.S.C. § 8705(a)—The decedent had not designated a beneficiary at the time of his death.

The parties have further stipulated that Walter J. Woolery was born in Oklahoma—That he was married in 1928 in Oklahoma to a lady by the name of Floy (maiden name unknown) and was divorced from her in Oklahoma in 1937—That all children born of this marriage now living are adults; that

Walter J. Woolery and Waneta Mefford were married and later divorced in 1949 in California—Two children were born of this marriage; that

Walter J. Woolery and Hazel Helen Keppart were married and later divorced in 1952 in California—That no children were born of said marriage; that

Walter J. Woolery and Waneta Mefford Woolery were married a second time in California in 1951. This marriage was annulled in California on March 6, 1958 on the ground that the said Walter J. Woolery had another wife then living and the marriage to the said other spouse was then in force—That no children were born of this union; that

Walter J. Woolery and Maude Lenora Thorson were married in California on March 15, 1958 and that no children were born of that marriage; that

Walter J. Woolery and Yi Byung Nam, a citizen of Korea, were married at the

office of the Mayor of Seoul on July 20, 1961. She was naturalized on November 8, 1962 in the United States District Court for the District of Hawaii—Her name was changed to Ann Jean Woolery. A daughter was born August 3, 1968.

Ann J. Woolery testified that Walter J. Woolery told her before they were married in Korea that he had been married two times to a person by the name of Waneta and to a person she believes was named Hazel—Hers was his third marriage. He did not tell her he had married Maude L. Woolery—She had never heard that name.

She said he had to show his divorce papers to the American Consul in Korea before they could be married—He gave some papers to the Consul—She believes they were the California divorce or annulment from Waneta Woolery that she had seen before they married. She introduced that document in these proceedings as an exhibit.

After they were married they rented a house in Seoul, Korea, and lived together as man and wife until he was transferred to Taiwan—She went with him and lived with him as his wife in Taiwan.

Mr. Woolery traveled quite a bit and she always went with him until he was transferred to Vietnam during the war. She could not go with him—She came to Philadelphia because she had no family and did not know where to go—She had a friend in Philadelphia.

She stayed in Philadelphia for about a year, when her husband was transferred to Bangkok, Thailand—She and her daughter joined him there—They lived in Bangkok until 1971 or 1972 when they came to Washington, D. C., and stayed for a week until they found a house in Fairfax County, Virginia. He was on leave at that time and they lived in Fairfax County for about a month or so when he had to return to Bangkok—He remained there until he died on March 12, 1975.

The house they bought in Fairfax County was titled in their joint names as husband and wife.

Ann J. Woolery and the daughter remained in Fairfax.

Walter J. Woolery designated Ann J. Woolery as his wife on all of his official government records subsequent to July of 1961, namely, upon passport applications from 1965 to 1974, health benefit enrollments in 1965, application for retirement in 1973 and on various travel orders from 1964 to 1973—He made a will in 1972 leaving all of his property to Ann J. Woolery, his wife.

The record further discloses that Walter J. Woolery and Maude L. Woolery lived together in California in the same abode as husband and wife from the date of their marriage until November of 1960 when his employment took him to Korea. They maintained a joint bank account at the Redlands Branch of the Bank of America—All of his paychecks were deposited in that bank—Maude L. Woolery handled all of the money—She sent him checks for his personal use.

He gave his wife Maude L. Woolery a general power of attorney before he left for Korea in 1960.

When Walter J. Woolery went to work for the United States Army in Taiwan in 1965, he opened a bank account in Taiwan and sent Maude L. Woolery at least a hundred dollars on the first and fifteenth of every month until October of 1972 when he had to take a cut in pay.

They borrowed some nine thousand dollars to build a house on property in Maude L. Woolery's name, and put the property in their joint names as husband and wife.

In April of 1967 Walter J. Woolery sent Maude a check in the amount of some $5,500.00 to pay off the note and deed of trust on this property. In April of 1972 he sent her a quit-claim deed to the property.

They wrote practically every week from the time he went to Korea until shortly before he died—Many of his letters (from 1968 to 1975) have been introduced into evidence—No mention is made in any of them that Mr. Woolery wanted a divorce or intended to leave

Maude L. Woolery or that he had remarried in Korea.

Maude L. Woolery had no knowledge that her husband had married Yi Byung Nam, now known as Ann J. Woolery, or anyone else since the date of their marriage in 1958—She testified that she had never received any service of process by publication or otherwise informing her that her husband Walter J. Woolery had instituted suit for divorce—She was led to believe from the letters received from him that he would soon be retiring and coming back to California.

■ Title 5 U.S.C. § 8705 provides where no beneficiary has been designated [this case here] the proceeds pass to the decedent's widow. "Widow" as used in that statute means "lawful widow." See *Tatum v. Tatum*, 241 F.2d 401 (9th Cir. 1957); *Metropolitan Life Insurance Company v. Spearman*, 344 F.Supp. 665 (M.D.Ala.1972); and *Brinson v. Metropolitan Life Insurance Company*, 226 F.Supp. 94 (E.D.N.C.1963).

■ Whether Ann J. Woolery or Maude L. Woolery is the lawful widow of the deceased Walter J. Woolery depends upon the validity of their marriage to him—and this necessarily depends upon the law of the state where the marriage was contracted. See *Metropolitan Life Insurance Company v. Spearman, supra.*

Both women entered into a ceremonial marriage with the deceased.

" '. . . [W]here two marriages of the same person are shown, the second marriage is presumed to be valid; that such presumption is stronger than and overcomes the presumption of the continuance of the first marriage, so that a person who attacks a second marriage has the burden of producing evidence of its validity. Where both parties to the first marriage are shown to be living at the time of the second marriage, it is presumed in favor of the second marriage that the first was dissolved by divorce. . . .

" 'The cases are not entirely in harmony as to the force and effect to be given to the presumption in favor of the validity of the second marriage. Generally, it is said to be a strong presumption but one that may be rebutted by evidence of invalidating facts. . . .

" 'The presumption arising in favor of the validity of a second marriage is not a conclusive presumption, but is what is known as a rebuttable presumption . . . .' " *DeRyder v. Metropolitan Life Insurance Company* (1965), 206 Va. 602, 145 S.E.2d 177. This presumption, however, is simply a rule of evidence and may be rebutted by evidence sufficient to overcome it. This burden is met if the evidence, in the light of all reasonable inferences, shows that the first marriage was not dissolved or annulled. See *Tatum v. Tatum, supra,* citing *In re Smith's Estate,* 33 Cal.2d 279, 201 P.2d 539.

■ Measured by these principles, the evidence in this case sufficiently rebuts the presumption that Walter J. Woolery's Korean marriage to Ann J. Woolery was valid and casts the onus probandi on the plaintiff.

To say the least, Walter J. Woolery hoodwinked the American Consul in Korea by showing him his California annulment from Waneta Woolery when he knew he had married Maude Thorson in California subsequent to that marriage—Ann J. Woolery testified that he had to present his divorce papers to the American Consul before they could be married in Korea—That Walter J. Woolery had shown her these annulment papers before their marriage and that she had never heard of his marriage to Maude Thorson.

From this testimony the logical inference is that Walter J. Woolery exhibited his annulment from Waneta Woolery to the American Consul prerequisite to his being allowed to marry Yi Byung Nam in Korea on July 20, 1961.

■ A marriage license obtained by fraud on the issuing state is voidable if not void ab initio.

 

Maude L. Woolery has presented ample evidence of her legal California marriage to Walter J. Woolery prior to that of the plaintiff's—Thus the burden of showing the invalidity of the first marriage shifts to the person so asserting, for once a marriage relation is shown to exist it will be presumed to continue in the absence of evidence of its dissolution by death or divorce. See *Metropolitan Life Insurance Company v. Spearman, supra.*

There is not a scintilla of evidence in this case that Walter J. Woolery's prior California marriage to Maude Thorson was dissolved by divorce or annulment—Her whereabouts was always known to Walter J. Woolery up to the date of his death—Their property dealings, the money sent and numerous letters sent and received conclusively prove this. All states require notice to the defendant if her address be known prerequisite to the obtaining of a valid divorce or annulment—Maude L. Woolery testified she had never been served with process or received notice of any divorce or annulment proceedings.

The plaintiff contends, however, that this is not enough—She says the defendant has to prove that Walter J. Woolery did not get a divorce or annulment in any of the numerous jurisdictions, both foreign and in the United States, in which he had lived since 1958—that she could have done this by having the clerk of court in the various places certify that he had searched the records and that no divorce or annulment had been granted in his jurisdiction. The authority relied upon by the plaintiff, *DeRyder v. Metropolitan Life Insurance Company, supra,* reads to the contrary—

" '. . . [T]he one contending against the legality of the second marriage is not required to make plenary proof of a negative averment. It is enough that he introduce such evidence as, in the absence of all counter testimony, will afford reasonable grounds for presuming that the allegation is true, and when it is done the *onus probandi* will be thrown on his adversary.' "

This the defendant has done—Therefore Walter J. Woolery's Korean marriage to Yi Byung Nam, being bigamous, was void from its inception leaving Maude L. Woolery the lawful widow entitled to the proceeds of the insurance policy in question.

As was stated in *Tatum v. Tatum, supra,*

" . . . [I]f the decedent had definitely desired that the proceeds of the policy should go to [the plaintiff], he could easily have fulfilled that wish by naming her beneficiary. This is indeed a hard case, but that fact does not permit this court to heed the old saw and make what we consider to be bad law."

Counsel for the defendant will prepare an appropriate order directing the Clerk of this Court to pay the money in the registry (deposited as the proceeds of the insurance policy in question) to the defendant Maude L. Woolery and her counsel, submit the same to counsel for the plaintiff for approval as to form, and then to the Court for entry.